# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-1862

_____

| | | |
|---|---|---|
| Sha'va Porter, mother of decedent; | * | |
| Herbert Murray, father of decedent; | * | |
| | * | |
| Plaintiffs-Appellants, | * | |
| | * | |
| Constance Porter, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | Appeal from the United States |
| Sharee L. Williams; | * | District Court for the |
| | * | Western District of Missouri. |
| Defendant, | * | |
| | * | |
| Julie Coffman; Augustin Torres; | * | |
| | * | |
| Defendants-Appellees, | * | |
| | * | |
| Tricia Rothweiler; John Doe, Unknown | * | |
| personnel of the Missouri Division of | * | |
| Family Services; James T. Clayton; | * | |
| Tina Clayton; Dept. of Social Services, | * | |
| Children's Division, | * | |
| | * | |
| Defendants. | * | |

_____

Submitted: November 14, 2005
Filed:  February 6, 2006

_____

Before SMITH, HEANEY, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

Constance Porter, a two-and-a-half year old, died from abuse after being placed in a foster home by the Missouri Division of Family Services. The district court granted summary judgment to Julie Coffman, a DFS social worker, and Augustin Torres, her immediate supervisor, based on official immunity. Having jurisdiction under 28 U.S.C. § 1291, this court affirms in part, reverses in part, and remands.

I.

On December 18, 2000, Sha'va L. Porter voluntarily placed her two daughters, Constance and Shebria, in the temporary care of DFS. With the approval of supervisor Augustin Torres, DFS immediately placed the children with James Thomas and Tina Clayton, licensed foster parents. Julie N. Coffman was then assigned as the social service worker for the case.

During a visit in early January 2001, Coffman noticed Constance had a "tiny scratch" on her left cheek. Tina Clayton explained she had scratched herself. After examining the child, Coffman noticed no other injuries and reported "[n]o concerns for the safety and welfare of Constance." Sometime later, Tina Clayton telephoned Coffman about bruises around Constance's eyes, saying the child hit her nose on a coffee table while playing. On January 11, Constance was treated for a contusion on her forehead. The medical report notes "reassurance given that she probably just hit her head during sleeping." The report also states that Constance was "very alert," "cheerful," "very positive," and "very well adjusted."

On February 13, Constance died from a subarachnoid hemotoma and bilateral retinal hemorrhage caused by "non accidental trauma." A subsequent medical examination also revealed a bruise with abrasions in the center of her back.

Tina Clayton pled guilty to first degree involuntary manslaughter. Porter and Herbert Murray, Constance's father, then sued for wrongful death and civil rights violations. On the wrongful death claim, the district court granted summary judgment to Coffman and Torres based on official immunity.

## II.

First, this court must address its jurisdiction. Generally, partial summary judgments are not final and not immediately appealable. *See Royal Ins. Co. of Am. v. Kirksville Coll. of Osteopathic Med., Inc.*, 304 F.3d 804, 808 (8th Cir. 2002). However, partial summary judgment is immediately appealable if the district court issues it under Federal Rule of Civil Procedure 54(b), or certifies it as an interlocutory appeal under 28 U.S.C. § 1292(b). *See Reinholdson v. Minnesota*, 346 F.3d 847, 859 (8th Cir. 2003).

In this case, on March 8, 2005, the district court granted summary judgment to Coffman and Torres on the 42 U.S.C. § 1983 claim and the wrongful death claim. The court invoked neither Rule 54(b) nor § 1292(b). On March 24, the district court remanded the remaining state-law claims against the Claytons to state court. On March 30, plaintiffs Porter and Murray filed their notice of appeal from the summary judgment order.

Coffman and Torres argue that this court does not have jurisdiction because the summary judgment was not immediately appealable, and Porter and Murray waived an appeal when the district court remanded the case to state court. Coffman and Torres primarily rely on the remand order's language: "The above

captioned case is remanded."   Thus, they claim, Porter and Murray waived their right to appeal the summary judgment.

In *Johnson v. Cartwright*, this court explained that the dismissal of one plaintiff effectively became a final order after a voluntary dismissal of the remaining defendants.  ***Johnson v. Cartwright***, 344 F.2d 773, 774 (8th Cir. 1965). Thus, a partial summary judgment becomes a final judgment once the remaining parts of the case are dismissed or otherwise resolved.  *See **Chrysler Motors Corp. v. Thomas Auto Co.***, 939 F.2d 538, 540 (8th Cir. 1991); *see also* **15B Charles Alan Wright et al., Federal Practice and Procedure § 3914.28 (2d ed. 1992)**. Remanding the remaining state-law claims, after the federal claims are resolved, has the same effect: It makes the partial summary judgment a final order because there is nothing left for the district court to resolve.

In this case, the district court had original jurisdiction under 28 U.S.C. § 1331 over Porter and Murray's § 1983 claim.  It had supplemental jurisdiction under 28 U.S.C. § 1367 over the other claims.  Once the district court granted partial summary judgment to Coffman and Torres, it had the discretion either to remand the remaining state-law claims or to keep them in federal court.  *See* **28 U.S.C. § 1367(c)(3)**; ***Lindsey v. Dillard's, Inc.***, 306 F.3d 596, 598–99 (8th Cir. 2002).  Even though all the remaining parties moved to remand "[t]he above captioned case," the court could have remanded it sua sponte.  Therefore, it does not matter that the parties themselves jointly moved to remand.

Morever, the remand order states that it involves "Sha'va Porter and Herbert Murray and the *remaining* defendants in this action, James and Tina Clayton." (emphasis added).  The order continues:  "Because the plaintiffs and the remaining defendants support remand, this Court will grant the pending motion."  The district court intended to remand only the issues involving James and Tina Clayton.

-4-

On October 4, 2005, the district court ruled it lacked jurisdiction to modify the remand order. According to Coffman and Torres, that proves this court lacks jurisdiction to hear the appeal. However, the district court notes only that it does not have jurisdiction under 28 U.S.C. § 1447(d) to reconsider its remand order. But the present case is not about whether the remand was proper. Moreover, by the time the district court issued its October 4 order, Porter and Murray had filed their notice of appeal on the summary judgment issue. The combination of the remand order and the notice of appeal divested the district court of all jurisdiction, preempting the court from modifying its orders. *See **Hunter v. Underwood***, 362, F.3d 468, 475 (8th Cir. 2005) (filing notice of appeal divests district court of jurisdiction).

When the district court remanded the remaining state-law claims against the other defendants, it had nothing left to resolve and the partial summary judgment became final. Therefore, this court has jurisdiction of the appeal.

III.

A.

This court reviews de novo a grant of summary judgment based on official immunity, using the same standard as applied by the district court. *See **Murray v. Leyshock***, 915 F.2d 1196, 1199 (8th Cir. 1990). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmovant, shows no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. **Fed. R. Civ. P. 56(c)**.

The district court granted summary judgment on the wrongful death claim based on official immunity. According to the official immunity doctrine, public officials "acting within the scope of their authority are not liable for injuries arising

from their discretionary acts or omissions, but they may be held liable for torts committed when acting in a ministerial capacity." ***Kanagawa v. State ex rel. Freeman***, 685 S.W.2d 831, 835 (Mo. banc 1985); *see also* ***State ex rel. Howenstine v. Roper***, 155 S.W.3d 747, 752 (Mo. banc 2005), *citing* ***Charron v. Thompson***, 939 S.W.2d 885, 886 (Mo. banc 1996).  Official immunity protects those "who, in the face of imperfect information and limited resources, must daily exercise their best judgment in conducting the public's business." ***Kanagawa***, 685 S.W.2d at 836, *citing* ***Jackson v. Wilson***, 581 S.W.2d 39, 42 (Mo. App. 1979).  Whether an act is discretionary or ministerial "depends upon the degree of reason and judgment required." ***Id.*** at 836.  "[A] discretionary act requires 'the exercise of reason in the adaption of means to an end and discretion in determining how or whether an act should be done or course pursued.'" ***Edwards v. McNeill***, 894 S.W.2d 678, 681 (Mo. banc 1995), *quoting* ***Rustici v. Weidemeyer***, 673 S.W.2d 762, 769 (Mo. banc 1984).  A ministerial act, on the other hand, is "of a clerical nature which a public officer is required to perform upon a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to his own judgment or opinion concerning the propriety of the act to be performed." ***Kanagawa***, 685 S.W.2d at 836, *quoting* ***Rustici***, 673 S.W.2d at 769.

## B.

Julie Coffman was the Jackson County social worker assigned to Constance. She was responsible for visiting Constance and the foster parents, as well as overseeing the placement.

Generally, a social worker's handling of the care of a child may be considered inherently discretionary.  This case is different.  The Jackson County DFS is operating under a consent decree that requires social workers to follow specific procedures in placing and monitoring children in foster homes.  *See* ***G.L. v. Stangler***, 873 F.Supp. 252 (W.D. Mo. 1994).  The stated purpose of the consent decree "is to provide all

class members with the child welfare services required by the constitution and the laws of the United States, including, but not limited to, protection from harm while in the custody of Missouri's Division of Family Services." *Id.* at 254.

Part II.E. of the consent decree, entitled "Pre-Placement Process and Supervision of the Placement," states that the "social worker shall supervise and monitor the child's placement" by 1) one face-to-face visit with the child and one contact with the foster parent(s) within 24 hours of placement; 2) a minimum of one face-to-face visit with the child and one contact with the foster parent(s) each week during the first month (two of these visits must be with those in the foster home); 3) in each of the next five months, a minimum of two face-to-face visits with the child and two contacts with the foster parent(s) (one visit must be with all those in the foster home); 4) during the remainder of a placement, a minimum of two contacts with the child each month (one must be face-to-face with the foster parent(s) in the foster home).[1] *Id.* at 258.   Part II.F. states:

> 2.  Any time a social worker becomes aware that a class member may have been the subject of abuse, neglect or an inappropriate method of discipline, the social worker shall:
> a.  Notify the Child Abuse/Neglect Central Hotline immediately.
> b.  Notify his/her supervisor promptly.
> c.  Notify the placement unit promptly.
> d.  Determine with his/her supervisor whether any child in the alternative care placement is in imminent danger due to abuse, neglect, inappropriate discipline, or dangerous environmental conditions, and should be removed immediately.
> e.  Document the incident in writing in the child's record and the record of the alternative care placement in which the child resides.

*Id.*

---

[1]On the facts of this case, the acts required in paragraphs 1) and 4) are irrelevant, as no injuries occurred then.

Both parts II.E. and II.F. refer to what the social worker "shall" do, indicating acts required without regard to the social worker's own judgment or opinion. Under the consent decree, the acts a social worker shall take when a child is placed in a foster home and may have been abused are ministerial, not discretionary. However, any ultimate determination whether a child "may have been the subject of abuse, neglect or an inappropriate method of discipline" or "is in imminent danger due to abuse, neglect, inappropriate discipline, or dangerous environmental conditions, and should be removed immediately" is discretionary.

The purpose of the consent decree is to reduce these types of incidents. *See id*. at 254. The consent decree requires regular visits to ensure that social workers gather information about the child and the foster home. If a social worker does not conduct these visits, she or he is less likely to determine whether a child may have been abused, neglected, inappropriately disciplined, or subjected to dangerous environmental conditions.

Of course, a social worker might not need to make every visit in order to determine the foster child's situation. However, this is a question of causation – which was not raised by Coffman in the district court. The official immunity doctrine is concerned only with the nature of the act. *See, e.g., **Kanagawa***, 685 S.W.2d at 835–36. But that is not to say an official who does not make the required visits – and thus is not protected by official immunity – is automatically liable. The next step is to determine causation: whether the social worker's failure to follow the consent decree resulted in the injury. *Cf. **Jungerman v. City of Raytown***, 925 S.W.2d 202, 206–07 (Mo. banc 1996) (if police officer had not left plaintiff's watch on desk accessible to public, it would not have been stolen); ***Harris v. Munoz***, 43 S.W.3d 384, 389 (Mo. App. 2001) (Stith, J.) (prisoner had negligence claim when prison officials fail to follow policy and cause loss of headphones and tape player).

In the present case, the district court notes that some visits were made to the Claytons' home during Constance's placement, but "there is a factual dispute as to whether the required visits were performed." This is a material fact necessary to determine the defense of official immunity in this case. If the visits were made according to the consent decree, then Coffman is protected by official immunity because a social worker's determinations based on visits are discretionary acts. However, if not all the visits were made, Coffman is not shielded by official immunity.

## C.

Augustin Torres was Coffman's supervisor at DFS. As a supervisor, parts II.E. and II.F. of the consent decree do not directly apply to him. *See G.L.*, 873 F.Supp. at 256 (separately defining "social worker" and "supervisor"). Torres is not under the same mandate of legal authority. His supervision of Coffman and management of Constance's case required the exercise of reason and professional judgment. Thus, Torres's acts were discretionary and he is entitled to official immunity.

## IV.

The judgment of the district court is reversed in part, affirmed in part, and the case remanded.

_____