# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-3349

_____

| | | |
|---|---|---|
| Percy Green, II, | * | |
| | * | |
| Plaintiff/Appellant, | * | |
| | * | |
| v. | * | |
| | * | |
| City of St. Louis, Missouri; St. Louis, | * | Appeal from the United States |
| Development Corporation; Francis | * | District Court for the Eastern |
| Slay, as Mayor and individually; Jeff | * | District of Missouri. |
| Rainford, officially and individually; | * | |
| Barbara Geisman, individually and | * | |
| officially; Rita Kirkland, individually | * | |
| and officially; Phillip Hoge, officially | * | |
| and individually, | * | |
| | * | |
| Defendants/Appellees. | * | |

_____

Submitted: May 14, 2007
Filed: November 2, 2007

_____

Before LOKEN, Chief Judge, JOHN R. GIBSON, and WOLLMAN, Circuit Judges.

_____

JOHN R. GIBSON, Circuit Judge.

Percy Green appeals from the district court's[1] entry of partial summary judgment against him and its entry of judgment on a jury verdict against him on the claims that remained for trial. Green argues that the district court erred in entering summary judgment against him on his claim under 42 U.S.C. §§ 1981, 1981a, and 1983 for refusing to hire him in retaliation for exercise of his First Amendment rights and on his claim under 31 U.S.C. § 3730(h) for retaliation against a whistleblower. He also contends that the district court erred in excluding evidence of statements made after he was terminated and in instructing the jury. We affirm.

Green's claim arises out of the reorganization of the City of St. Louis' program for certification of businesses as Minority Business Enterprises or Women's Business Enterprises. In 1993, Green was hired by St. Louis Development Corporation, a non-profit organization, which administered the City's Women and Minority Business Enterprise Participation Program. Green was named Director of the certification program. The City also provided certification of Women and Minority Business Enterprises through another office, the Lambert-St. Louis Airport's Contract Administration/Disadvantaged Business Enterprise Office.

Shortly after Mayor Francis Slay took office in April 2001, his Special Assistant Rita Kirkland conducted a review of the City's Women and Minority Business Enterprise certification and compliance program. Kirkland determined that the functions performed by St. Louis Development Corporation's compliance and certification program could be handled more efficiently and with fewer complaints by the Airport's Disadvantaged Business Enterprise Office. After reviewing Kirkland's report, Slay and his staff decided to transfer the functions performed by Green's office to the Airport's office. On September 26, 2001, the St. Louis Development Corporation eliminated its certification section, and Green lost his job.

---

[1]The Honorable Jean C. Hamilton, United States District Judge for the Eastern District of Missouri.

Green brought a three count complaint alleging two civil rights claims, each alleging, inter alia, that he had been discriminated against by being laid off and not rehired. He alleged that the defendants terminated his employment and refused to rehire him in retaliation against him for exercising his First Amendment rights in speaking out about women- and minority-owned business certification. The second count alleged that he had been laid off and not rehired because he objected to improper certification of businesses which were not truly owned by women or minorities. He included a third count, which alleged retaliation for acting as a whistleblower and sought recovery under 31 U.S.C. § 3730(h), the False Claims Act. Green named as defendants Mayor Slay; Jeff Rainford, Chief Deputy Mayor; Barbara Geisman, Assistant to the Mayor; Rita Kirkland, Special Assistant to the Mayor; St. Louis Development Corporation and its executive director, Philip Hoge; and the City of St. Louis.

The defendants moved for summary judgment, which the district court granted in part. First, the district court held that Green had not come forward with evidence substantiating his claim that the defendants unlawfully failed to rehire him because he never showed he had applied for any job after the lay-off, he offered no evidence as to the qualifications of any job opening the City had, and he did not show the qualifications of those hired. Green v. City of St. Louis, No. 4:05CV198 JCH, 2006 WL 1663439, at *3 (E.D. Mo. 2006).

Next, the district court considered Green's claim that he had been laid off in retaliation for protesting the City's certification process. The court held that Green had brought forth evidence that he had engaged in speech protected by the First Amendment when he gave interviews to the newspaper protesting the City's policy of granting reciprocal certification, in which businesses certified by certain other agencies would automatically qualify for certification from the St. Louis Development Corporation. According to the district court, the short time between a June 17, 2001 newspaper article in the St. Louis Post-Dispatch quoting Green and the City's decision

-3-

to review the certification process, which led to Green's termination, gave rise to an inference that Green's statement to the press led to the termination of his job.  Id. at *5.  The court therefore held that Green had established a prima facie case of retaliation.  The City contended that its transferral of the certification process to the Airport office, which resulted in loss of Green's job, was prompted by legitimate, nondiscriminatory reasons of expediting processing, minimizing duplication of work, and improving oversight of the certification process.  Id.  The court determined, however, that Green met the City's defense with evidence of pretext, in that the Airport Disadvantaged Business Enterprise office had as great a backlog as Green's office had.  Id.  Therefore, the court determined that there was a triable issue of fact as to whether Green had been laid off for exercising his First Amendment rights.

The court construed Count II of the complaint as an allegation that Green had been terminated for refusing to engage in mail fraud by certifying businesses as women- and minority-owned without adequate investigation.  The court concluded that Green had not shown evidence that the defendants engaged in mail fraud or tried to coerce Green to do so.  Id. at *8.  Therefore, the court entered summary judgment against Green on his claim that he was terminated in violation of public policy, though the court noted that Count II could survive as stating a claim under 42 U.S.C. § 1981 for retaliation against Green for protesting unlawful interference with contract rights in relation to the certification process.  Id., at *9 & 11 n. 18.

The district court also held that Green had failed to bring forward any evidence that he had engaged in activity protected by the False Claims Act, since he could not identify any grant applications that made false assertions about inclusion of women and minorities and he could not identify any reports submitted to the federal government that were based on false certifications.  Id. at *10.

The parties proceeded to trial on the claim that Green was laid off in retaliation for his exercise of First Amendment rights in making the statement to the St. Louis

-4-

Post-Dispatch. At the close of Green's case, the court dismissed the individual defendants. The court submitted the claim against the City to the jury to decide whether (1) the City terminated Green's employment, and (2) the termination was caused at least in part by Green's statements to the St. Louis Post-Dispatch. The court also submitted to the jury a special interrogatory to assist the court in determining whether Green's statement to the Post-Dispatch was protected by the First Amendment. The interrogatory asked: "Did Plaintiff make his statements that were published in the Post-Dispatch on June 17th, 2001, in his capacity as a citizen or in his capacity as the Director of the Women and Minority Business Enterprise Certification Program?" The jury returned a verdict in favor of the City, as well as an answer to the special interrogatory finding that Green's statements were made as Director of the Women and Minority Business Enterprise Certification Program.

Green appeals the district court's entry of partial summary judgment and its entry of judgment on the jury verdict.

## I.

Green first contends that the district court erred in entering summary judgment against him on his claim that the City unlawfully refused to rehire him and on his claim of retaliation under the False Claims Act. We review the entry of summary judgment de novo, asking whether the record, viewed in the light most favorable to Green, showed that there was no genuine issue of material fact and that the defendants were entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Hope v. Klabal, 457 F.3d 784, 790 (8th Cir. 2006).

Green contends that the district court erred in entering summary judgment against him on his claim that the defendants unlawfully refused to rehire him after he was laid off. To establish a prima facie claim for discriminatory failure to hire, a plaintiff must show that "he applied and was qualified for a job for which the

-5-

employer was seeking applicants." Chambers v. Wynne Sch. Dist., 909 F.2d 1214, 1216 (8th Cir. 1990) (applying test from McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), in context of racial discrimination claim). Green conceded that he had not applied for a job. However, the application requirement will be excused

> if the job opening was not officially posted or advertised and either (1) the plaintiff had no knowledge of the job from other sources until it was filled, or (2) the employer was aware of the plaintiff's interest in the job notwithstanding the plaintiff's failure to make a formal application.

Chambers, 909 F.2d at 1217 (emphasis added). Green argues, without citation to the record, that the application requirement should be obviated in his case because "he was told at the time of his layoff that he would be contacted for any possible recall or rehire." He contends he was told this "both by Phil Hoge, head of [St. Louis Development Corporation] as well as Barbara Geisman, Mayor Slay's assistant for development, but he was never called to return to work." Green filed an affidavit admitting that he never applied for a position, but stating that when he was terminated, he was "told I was to be recalled to service. I would be notified, but I never was." He averred that he learned that about a year after his termination, a woman named "Willis" was hired for a position "related to minority and female contractor recruitment for city contracts . . . and MBE or WBE certification status." He gave no information about the job that Ms. Willis was hired for--either its duties, rank, or necessary qualifications. He also points to two lists in the defendants' statements of uncontroverted fact: one list shows the employees at the Airport's Disadvantaged Business Enterprise office in September 2001 and the other list shows the current list of employees as of February 2006. Comparison of the lists indicates that there has been some turnover and four new jobs have been added. Again, the list shows nothing about the specific jobs' duties, rank, or the necessary qualifications.

Green does not fit within the specific exception to the application requirement that we described in Chambers since he has not shown that any jobs that came available were not posted or advertised. See 909 F.2d at 1217; see also Smith v. J.

Smith Lanier & Co., 352 F.3d 1342, 1345 (11th Cir. 2003) (per curiam) (where openings are publicized, plaintiff must apply, even if she expressed general interest in being rehired). However, we have described the circumstances for excusing an application more broadly than in Chambers, stating that there is no need for a plaintiff to apply for an open position where the employer had "some reason or duty to consider him for the post." Kehoe v. Anheuser-Busch, Inc., 96 F.3d 1095, 1105 n.13 (8th Cir. 1996) (quoting Fowle v. C&C Cola, 868 F.2d 59, 68 (3d Cir. 1989)). Even using this broader formulation, we cannot conclude that Green has established that any particular jobs were open for which he was qualified or which the City had reason to believe he would be interested in. He had formerly been in charge of the certification office, so the alleged assertion that he would be "recalled" would presumably mean that he would be rehired to a position comparable to what he did before in duties and rank. Since he has offered no evidence about the jobs that became available, we simply have no way of knowing whether the jobs were commensurate with his previous duties, compensation, and rank, or whether the City had any reason to believe Green would be interested. Further, Green has not shown that Hoge and Geisman, the people who spoke with Green at the time of the lay-off, were in anyway responsible for hiring personnel for the Airport Disadvantaged Business Enterprise office; Jack Thomas, who was in charge of that office, was not shown to be aware that Green wanted to be hired. While it is true that the burden of making a prima facie case of discrimination should not be onerous, Kehoe, 96 F.3d at 1105 n.13, there are too many gaps in this record to show that the City knowingly bypassed Green for a suitable job opening.

Green also contends that the district court erred in entering summary judgment against him on his claim for retaliation under the False Claims Act, 31 U.S.C. § 3730(h). Section 3730(h) allows an employee to recover if he is

> discharged, demoted, suspended, threatened, harrassed, or in any other manner discriminated against in the terms and conditions of employment

-7-

by his or her employer because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under this section, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section . . . .

The False Claims Act imposes liability for knowingly presenting false or fraudulent claims to the government for payment or approval. See 31 U.S.C. § 3729. An employee engages in activity protected under the Act if the employee undertakes acts in furtherance of a False Claims Act suit and if the employee believes, and has reason to believe, that his or her employer might be committing fraud against the government. See Schuhardt v. Washington Univ., 390 F.3d 563, 567 (8th Cir. 2004). Green contends that he showed that he complained to various City officials and to the Post-Dispatch about the City's policy of certifying businesses as women- or minority-owned on the basis of certifications by other agencies. The district court held that Green admitted in his deposition that he was not contending that grant applications were made with fraudulent information, and he could not point to any fraudulent grant application or report or to any document in which he alerted the City to fraud or illegal activity. Accordingly, the court concluded that his False Claims Act count failed. 2006 WL 1663439, at *10.

Green contends he alerted the City to possible fraud, and he relies on memoranda he sent to various city officials disputing the advisability of using other agencies' determinations of women or minority ownership of businesses. None of those memoranda describes any actual fraudulent claim being presented to the government. At Green's deposition, he disavowed having knowledge of any document that had been submitted to the government with false information, but said that he only knew that the City's system of reciprocal certification was "flawed" and created a "high probability" that the City's reports were "flawed." He said he was not alleging that there was any fraudulent information on grant applications. Green objected to the City's practice of certifying businesses in reliance on other agencies' determinations, not because he contended the City was intentionally using false

-8-

information, but merely because he contended the other agencies' work was not as reliable as work done in-house. Yet, he was unable to point to any case in which he even suspected that the City's practice had led to a false statement. If Green had no reason to believe there was a false or fraudulent claim, he is not protected from retaliation under the False Claims Act. See Schuhardt, 390 F.3d at 567; Shekoyan v. Sibley Int'l, 409 F.3d 414, 423 (D.C. Cir. 2005) (no activity protected by False Claims Act where employee testified, "I have never concluded that there was corruption."), cert. denied, 546 U.S. 1173 (2006); Lang v. Northwestern Univ., 472 F.3d 493, 495 (7th Cir. 2006) (employee who alleges fraud with no reasonable basis for believing there was fraud is not protected from retaliation by False Claims Act). Green's activities therefore cannot be said to be activities protected by § 3730(h). The district court did not err in concluding that Green conceded away his claim.

## II.

Green contends that the district court erred in excluding testimony of three witnesses regarding a meeting that occurred in December 2001 after Green's employment was terminated on September 26, 2001. According to Green, after his job was terminated, thirty-five to fifty of his supporters staged a demonstration on his behalf outside the mayor's office. In December three of his friends, Norman Seay, Karl Grice, and Don Gammon, attended a meeting with Mayor Slay, Jeff Rainford, and Rita Kirkland, at which Green's friends asked why he had been fired and sought his reinstatement. According to an affidavit of Grice, Rainford responded, "We could try to find a job for Percy (Mr. Green) but he's to not [sic] to handle. He's radioactive." Green contends that the real quote was, "[H]e's too hot to handle."[2]

---

[2]On appeal, Green also relies on another reported remark by Rainford that Green was "too passionate about civil rights," but this remark was not discussed in ruling on the motion in limine and Green does not contend that he preserved it at trial. Similarly, Green makes some mention of the deposition testimony of Jack Thomas, but he does not argue that he offered the testimony at trial.

The City made a motion in limine asking that evidence of this conversation be excluded because it occurred after the reorganization and the termination of Green's job and therefore was not relevant to the job termination claim, but only to the refusal to rehire claim that the court had dismissed on summary judgment. The court asked Green's counsel why a conversation after the lay-off was relevant, and counsel responded, "Yeah, it was indeed after the layoff, Your Honor, but the fact that they referred to their objection to him as being radioactive is an indication that they had some bias against him because of–that they didn't have a good reason for having any objection to him." The court held that the testimony was only relevant to the refusal to hire claim and so ruled that it would not be admissible on the issues left for trial. Green did not offer the witnesses at trial.

We review the district court's evidentiary rulings for abuse of discretion, and we may not reverse unless the district court erred and the error affected the substantial rights of the appellant. Archer Daniels Midland Co. v. Aon Risk Servs., Inc., 356 F.3d 850, 857 (8th Cir. 2004).

The district court did not abuse its discretion in finding that the conversation pertained to post-termination events and was therefore not relevant to the City's decision to reorganize its system for certification of women- and minority-owned businesses and the resulting lay-off of Green. The district court did not purport to state a rule that post-termination statements are never relevant to state of mind at the time of termination; instead, the court assessed the evidence as presented to it and concluded that the statements here were only relevant to later events. There was no abuse of discretion.

III.

Green contends that the district court erred in submitting an interrogatory to the jury which asked, "Did Plaintiff make his statements that were published in the Post-

Dispatch on June 17, 2001, in his capacity as a citizen or in his capacity as a citizen or in his capacity as the Director of the Women and Minority Business Enterprise Certification Program?" The interrogatory was given to the jury to assist the court in making the legal determination of whether the communication was entitled to First Amendment protection. See McGee v. Pub. Water Supply Dist. No. 2, 471 F.3d 918, 920 (8th Cir. 2006) (whether employee's statement was made as citizen on a matter of public concern and so is entitled to First Amendment protection is question of law).

We review a district court's decisions regarding jury instructions for abuse of discretion, reversing only if any error affected a party's substantial rights. Bass v. Flying J, Inc., — F.3d —, 2007 WL 2683017, at 2* (8th Cir. 2007).

It is difficult to discern what Green contends was wrong about the interrogatory, but in any case, any defect was harmless. The jury found against Green on the verdict director asking whether the City terminated Green's employment, and if so, whether it did so in part because of Green's statements to the Post-Dispatch resulting in the June 17, 2001 article. Therefore, even if Green's statements received full First Amendment protection (which is the issue at stake in the interrogatory), the jury had already found against Green on the other elements of his claim. Any possible defect in the interrogatory was harmless.

We affirm the district court's entry of partial summary judgment in favor of the City and its entry of judgment on the jury verdict.

_____