# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-3053

_____

| | |
|---|---|
| Jami Neco Schmidt, | * |
| | * |
| Plaintiff - Appellant, | * |
| | * |
| v. | * Appeal from the United States |
| | * District Court for the Eastern |
| City of Bella Villa; Edward Locke, Jr., | * District of Missouri |
| Chief of Police, in his individual | * |
| capacity, | * |
| | * |
| Defendants - Appellees. | * |

_____

Submitted: April 14, 2008
Filed:  March 2, 2009 (corrected 3/18/09)

_____

Before LOKEN, Chief Judge, JOHN R. GIBSON, and MELLOY, Circuit Judges.

_____

JOHN R. GIBSON, Circuit Judge.

Jami Neco Schmidt filed this claim for damages under 42 U.S.C. § 1983 and Missouri's strip search law, Mo. Rev. Stat. § 544.193.  She brought claims against the City of Bella Villa, Missouri, and Chief of Police Edward Locke, Jr. in connection

with the alleged post-arrest photographing of her tattoo. She appeals from the district court's[1] entry of summary judgment on each of her claims and from two evidentiary decisions. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

I.

On June 3, 2005, Jami Neco Schmidt, a 20-year-old woman, was riding in a vehicle driven by Sarah McVey. Police Chief Edward Locke, Jr. stopped the vehicle after McVey committed several moving violations. During the stop, Locke smelled alcohol and observed at least two open cans of beer in the car. Locke asked the passengers, including Schmidt, for identification.

Schmidt gave a false name, "Samantha Smith," and a false date of birth and social security number. When Locke attempted to run the passengers' identifying information through his computer, he learned that the information Schmidt had given was false. Schmidt also failed field sobriety tests. Locke arrested Schmidt for making a false declaration and for being a minor in possession of alcohol. Locke issued a citation to McVey, the driver, but did not arrest her or any of the other passengers in the car. Locke then transported Schmidt to the Bella Villa police station. Schmidt does not contest the propriety of her arrest.

At the police station, Locke interviewed Schmidt regarding her identity. This process included the completion of a booking sheet with information about the arrest and Schmidt's identification. The booking sheet included a section for listing "scars/marks/tattoos/deformities." In response to Locke's inquiry about whether she had any scars, marks, tattoos or deformities, Schmidt indicated that she had a butterfly tattoo. The tattoo is approximately two inches long and is located approximately two

---

[1]The Honorable Stephen N. Limbaugh, Sr., United States District Judge for the Eastern District of Missouri, now retired.

inches from Schmidt's hipbone. The tattoo was hidden by her clothing at the time of her booking.

The following facts are in dispute, but for the purposes of reviewing a motion for summary judgment, we will recite the facts in the manner most favorable to Schmidt, the nonmoving party. O'Brien v. Dep't of Agriculture, 532 F.3d 805, 808 (8th Cir. 2008). After Schmidt described her tattoo to Locke, he requested that she take a picture of the tattoo. When she asked why he needed a picture, he told her that it was for identification purposes. Locke provided Schmidt with a Polaroid camera and asked her to go into the bathroom to take a picture of the tattoo. When she returned with a photograph of her tattoo, Locke examined the picture and stated that it was not good enough. Locke indicated that he would need to take a better picture. Pursuant to Locke's request, Schmidt unbuttoned her jeans partway and folded them inwards to permit him to take a photograph. He again rejected this photograph as being incomplete or otherwise unacceptable. To permit Locke to take an acceptable photograph, Schmidt further unbuttoned her jeans and folded them inwards again. Locke took a second photograph, which he apparently found to be acceptable. Schmidt was later released on her own recognizance.

In her brief to this court, Schmidt alleges that Locke used harassing and/or threatening language toward her during her time in custody. However, these allegations were not before the district court in response to the motion for summary judgment. See Holland v. Sam's Club, 487 F.3d 641, 644 (8th Cir. 2007).

Schmidt alleged multiple claims based on the incident of photographing her tattoo. She brought claims under 42 U.S.C. § 1983 that Locke violated her Fourth and Fourteenth Amendment rights. She additionally alleges four theories of municipal liability. Finally, she brought tort claims against the City and Locke under Missouri's strip search law, Mo. Rev. Stat. § 544.193.

-3-

After discovery, the district court granted a motion to strike Schmidt's expert witness, St. Louis Police Officer, Lieutenant Anthony Russo. After her deposition, Schmidt also filed a photographic exhibit allegedly depicting her tattoo. The district court also granted a motion to strike the exhibit. Finally, City and Locke filed a motion for summary judgment on all of Schmidt's claims. In response, Schmidt conceded several, and the court granted summary judgment on the remaining claims.[2] Schmidt appeals these rulings, which we affirm.[3]

## II. Evidentiary Issues.
### A. Exclusion of Photographic Exhibit.

Schmidt appeals from the district court's exclusion of a photographic exhibit she submitted to show the location of her tattoo and the position of her clothing when Chief Locke took his photos.[4] City and Locke urge us to uphold the district court's order striking the exhibit on the basis that there was insufficient foundation to

---

[2]Schmidt opposed summary judgment on the following claims:
Count 1: Section 1983 Claim for violation of the Fourth and Fourteenth Amendments against Locke;
Count 2: Section 1983 claim for violation of the Fourth and Fourteenth Amendments against City of Bella Villa on the basis that Locke is a policy maker or, alternatively, on the basis of City's failure to train, supervise and control Locke;
Count 4: State tort claim for violation of Mo. Rev. Stat. § 544.193 against Locke only.

[3] After oral argument, Schmidt submitted a motion to supplement the record with deposition testimony confirming that the Polaroid camera used to take the photographs exists. Because City and Locke admit that photographs were taken with the Polaroid camera, we deny the motion because the relief it seeks is unnecessary given our disposition.

[4]The photograph submitted by Schmidt was taken in or around January 2007 for the purpose of this lawsuit.

establish the authenticity of the photograph. See Fed.R.Evid. 901. We review the district court's order for abuse of discretion and accord the district court's evidentiary decisions substantial deference. Watson v. O'Neill, 365 F.3d 609, 615 (8th Cir. 2004). "[W]e may not reverse unless the district court erred and the error affected the substantial rights of the appellant." Green v. City of St. Louis, 507 F.3d 662, 669 (8th Cir. 2007) (citing Archer Daniels Midland Co. v. Aon Risk Servs., Inc., 356 F.3d 850, 857 (8th Cir. 2004)).

In order to be admissible, a photograph must be shown to be an accurate representation of the thing depicted as it appeared at the relevant time. See United States v. Stierwalt, 16 F.3d 282, 286 (8th Cir. 1994). Schmidt contends that the photographic exhibit accurately depicts her tattoo and, thus, should be admitted. However, Schmidt's argument shows that her purpose is not to show the condition and location of the tattoo on the date it was photographed in her attorney's office. Rather, Schmidt submits the exhibit for the purpose of showing not only the tattoo, but the location of her clothing and her state of undress in the station photographs. We evaluate the authenticity of the exhibit in that context.

The district court found that the legal secretary to Schmidt's counsel, who provided the affidavit accompanying the exhibit, had no personal knowledge of whether the tattoo depicted in the photograph was in the same location and condition on June 3, 2005, as depicted in the station photographs. Further, the district court was troubled by the discrepancy between allegations in Schmidt's complaint and her deposition testimony that raise questions about whether the photographic exhibit is an accurate representation of the location of Schmidt's clothing at the time of her arrest. In the exhibit, Schmidt's jeans are unzipped and folded outward to display her tattoo. As the court noted, Schmidt alleged in her complaint that she "unbuttoned" her jeans and "cropped" them inward to permit Locke to take the photographs. Thus, the jeans worn in the exhibit are not the same jeans worn by Schmidt during the photographing,

nor are they arranged in the same manner. We find no abuse of discretion in the district court's decision to strike the photographic exhibit for lack of foundation.

Even if we were to determine that the photographic exhibit was admissible for the limited purpose of showing the location and condition of Schmidt's tattoo, we could not conclude that the error affected Schmidt's substantial rights. Although there is a semantic disagreement regarding what to call the location of the tattoo, it is undisputed that the tattoo is located two inches from Schmidt's hipbone on her lower abdomen. Schmidt admits as much in her brief to this court: "Appellant asserts that even without the photo[,] her testimony in her deposition was sufficient to establish the location of the tattoo." We affirm the district court's decision to exclude the photographic evidence.

### B. Exclusion of Expert Testimony.

Schmidt appeals the district court's order striking the designation of St. Louis Police Lieutenant Anthony Russo as an expert witness. Schmidt argues that Russo's testimony on police practices–including decisions to arrest, decisions to search for arrest warrants, evidence collection procedures, strip-search procedures, and general police policies–is admissible under Federal Rule of Evidence 702. Schmidt also contends that the district court improperly excluded Russo's testimony because he is not an academic.

The district court excluded Russo's testimony after concluding that it was not sufficiently relevant or reliable under the test articulated in Daubert v. Merrill Dow

Pharmaceutical, Inc., 509 U.S. 579 (1993), which enunciates the role of the trial judge under Rule 702. Rule 702, which governs the introduction of expert testimony, states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The trial judge is first charged with determining whether the witness is qualified to offer expert testimony. Daubert, 509 U.S. at 589; Fed.R.Evid. 702. Additionally, Daubert charges the district court as follows: "[U]nder the Rules the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." 509 U.S. at 589; see also Kumho Tire Co. v. Carmichael, 526 U.S. 137, 142 (1999) (non-scientific expert testimony). We review the district court's decision to exclude expert testimony under an abuse of discretion standard. See Gen. Elec. Co. v. Joiner, 522 U.S. 136, 143 (1997). We will not reverse the district court unless the district court abused its discretion and its ruling had a substantial influence on the outcome. See Green v. City of St. Louis, 507 F.3d 662, 669 (8th Cir. 2007).

The district court issued a thorough order regarding Russo's expert testimony. First, the district court found that a number of the opinions offered by Russo were improper legal conclusions regarding the reasonableness of conduct in light of Fourth Amendment standards. Schmidt concedes that some of the conclusions drawn in the expert report were improper legal conclusions, but asks that Russo be permitted to testify regarding police procedures. Schmidt, however, does not specify which of Russo's opinions are proper and which are not. The district court found that Russo's expert opinions regarding the reasonableness of the evidence collection and strip search procedures were impermissible legal conclusions. Russo's report consisted of

his opinions regarding the overall reasonableness of the procedures used and, as such, were not fact-based opinions. See Peterson v. City of Plymouth, 60 F.3d 469, 475 (8th Cir. 1995) (expert testimony on reasonableness of police behavior in light of Fourth Amendment standards is statement of legal conclusions and not admissible). In addition, Russo's report is devoid of any standards and explanations that would assist the trier of fact in contextualizing his opinions. See United States v. Ellsworth, 738 F.2d 333, 336 (8th Cir. 1984) (expert's "conclusory statement" properly excluded for lack of foundation). Accordingly, we cannot say that the district court abused its discretion by refusing to admit Russo's testimony regarding the reasonableness of police procedures.

The district court also found that the proffered expert testimony regarding Locke's decision to arrest Schmidt, his decision not to arrest McVey or any of the other passengers, and the lack of printed policy manuals for the Bella Villa Police Department was not relevant to any issue in the case. Schmidt argues that the testimony regarding the decisions to arrest are relevant to the "totality of the circumstances," which are used to evaluate her Fourth Amendment § 1983 claim. See Tennessee v. Garner, 471 U.S. 1, 8-9 (1985). Garner, on which Schmidt relies, is inapposite; it examines the totality of the circumstances as they existed at the time of a search to determine whether the search was reasonable. Id. Schmidt seeks instead to have admitted an opinion as to circumstances that existed at the time of her arrest, which she does not challenge and which are not relevant to whether the subsequent search was reasonable. Whether Schmidt was arrested outside the Bella Villa city limits or whether Locke should have reasonably believed McVey to be intoxicated is not relevant to Schmidt's claim: that photographing her tattoo violated her rights. Thus, it was not an abuse of discretion to exclude this testimony.

We do conclude that the district court should not have excluded the testimony regarding the existence of policy manuals on the basis of relevance because it is relevant to the issue of municipal liability. This error does not have a substantial

influence on the outcome of this case, though, because we do not reach the question of municipal liability. See infra. Thus, we affirm the district court.

Finally, the district court found that Russo was not qualified to offer testimony regarding strip-search procedures, Locke's motivations, or the psychological impact of custody on arrestees. Schmidt argues that the district court improperly assumed that Russo was not qualified because he was not an academic or administrator. Police officers may be qualified by their experience to testify as expert witnesses. See United States v. Boykin, 986 F.2d 270, 275 (8th Cir. 1993). However, for an expert witness to be qualified based on experience, that experience must bear a close relationship to the expert's opinion. Sylla-Sawdon v. Uniroyal Goodrich Tire Co., 47 F.3d 277, 283-84 (8th Cir. 1995). The district court concluded that there was not a close fit between Russo's experiences and the subjects on which his testimony was offered. Russo has experience working as a traffic patrolman, a watch commander, and in organizing security operations for public events. As noted by the district court, there was no evidence that Russo had any experience with civil rights violations or with strip searches. Additionally, there was no evidence that Russo had any work experience pertinent to psychology. The district court's finding was not an abuse of discretion.

The district court fully considered Russo's expert testimony under the rubric of Rule 702 and Daubert. The court did not abuse its discretion by striking the expert designation of Russo.

## III. Section 1983 Claims.

Schmidt appeals the entry of summary judgment on her § 1983 claims in favor of Locke and the City of Bella Villa. We review a grant of summary judgment de novo, viewing the facts in the light most favorable to the nonmoving party. Green v. City of St. Louis, 507 F.3d 662, 666 (8th Cir. 2007). Summary judgment is only

appropriate if the record shows "that there [is] no genuine issue of material fact and that the defendants [are] entitled to judgment as a matter of law." Id. However, summary judgment will not be reversed on the basis of speculation, conjecture, or fantasy. Putman v. Unity Health Sys., Inc., 348 F.3d 732, 733-34 (8th Cir. 2003).

The essential elements of a §1983 claim are (1) that the defendant(s) acted under color of state law, and (2) that the alleged wrongful conduct deprived the plaintiff of a constitutionally protected federal right. DuBose v. Kelly, 187 F.3d 999, 1002 (8th Cir. 1999). The parties focus primarily on the second element of the claim. We assume that there is at least a genuine issue of material fact regarding the first element, that Locke acted under color of state law. See Haberthur v. City of Raymore, 119 F.3d 720, 722, 724 (8th Cir. 1997) (finding that police officer acted under color of state law when "on duty and in uniform during the incidents, carrying a gun, and driving a police vehicle"). To satisfy the second element, Schmidt advances two theories of constitutional violation: a Fourth Amendment search and seizure violation and a Fourteenth Amendment substantive due process violation.

A. Fourth Amendment Search and Seizure.

Schmidt first argues that photographing her tattoo was equivalent to a strip search and was thus an unreasonable search because Locke lacked reasonable suspicion that she possessed a concealed weapon or contraband. Schmidt relies on several Second Circuit cases that establish a per se requirement of individualized suspicion to justify a strip search of a misdemeanor arrestee. See Hartline v. Gallo, 546 F.3d 95, 100 (2d Cir. 2008); Weber v. Dell, 804 F.2d 796 (2d Cir. 1986). Those searches, however, were much more intrusive than the search here. See Hartline, 546 F.3d at 98 ("Donovan required Hartline first to remove all of her lower garments and bend over while Donovan made a visual inspection of her orifices, and then to remove her upper garments and lift her bra."); Weber, 804 F.2d at 799 (". . . Mrs. Weber was required to remove all her clothing and to expose her body cavities for visual

-10-

inspection."). As we explained in <u>Smook v. Minnehaha Co.</u>, 457 F.3d 806, 812 (8th Cir. 2006), <u>cert. denied</u> 549 U.S. 1317 (2007), "strip searches requiring a person to disrobe completely have a 'uniquely invasive and upsetting nature.'" The search that Schmidt was subjected to is not a strip search within the meaning of those cases. <u>See id.</u>; <u>see also</u> <u>United States v. McKissick</u>, 204 F.3d 1282, 1297 n.6 (10th Cir. 2000) (rejecting the contention that a search was transformed into a strip search when a police officer unzipped the defendant's pants); <u>United States v. Palmer</u>, 575 F.2d 721, 723 (9th Cir. 1978) (search requiring a woman to lift her skirts and reveal an undergarment was not a full strip search "and require[d] less justification to render it reasonable").

Rather than triggering a per se rule, the search in this case requires balancing the factors set out in <u>Bell v. Wolfish</u>, 441 U.S. 520 (1979). <u>See</u> <u>Richmond v. City of Brooklyn Ctr.</u>, 490 F.3d 1002, 1006 (8th Cir. 2007) (applying <u>Bell</u> factors in absence of per se rule); <u>Smook</u>, 457 F.3d at 810 (same); <u>see also</u> <u>Stanley v. Henson</u>, 337 F.3d 961, 964 (7th Cir. 2003) (applying <u>Bell</u> factors to uphold a clothing exchange practice that required a woman remove her outer clothing and expose her bare breasts since she was not wearing a bra). Under <u>Bell</u>, courts must consider (1) the justification for initiating the search, (2) the scope of the particular intrusion, (3) the place in which the search is conducted, and (4) the manner in which it is conducted. 441 U.S. at 559. These factors are used to balance the need for a particular search with the rights of the individual being searched. <u>Id.</u>

First we look to the justification for the search. Suspicion that weapons or contraband will be discovered is not the only acceptable justification for a search. There are legitimate law-enforcement purposes served by photographing the tattoos of an arrestee for use in identification. <u>See</u> <u>United States v. Blasingame</u>, 219 Fed. Appx. 934, 944-46 (11th Cir.) (affirming introduction of photograph of defendant's torso taken after arrest to document tattoo and other identifying marks), <u>cert. denied</u> 128 S. Ct. 320 (2007); <u>see also</u> <u>Johnson v. Florell</u>, No. 05-159, 2006 WL 3392784, at

*5 (D.Minn. Oct. 19, 2006) (finding "no inherent constitutional violation in lifting a tee shirt or holding up shirt sleeves to photograph tattoos" for identification purposes), aff'd, 292 Fed. Appx. 523 (8th Cir. 2008). While the photographing in this case was arguably more intrusive, as it required Schmidt to unzip her pants, we do not believe that this distinction is sufficient to render the search a violation of the Fourth Amendment. In this case, Schmidt admits that Locke told her that the photograph of her tattoo was needed for identification purposes. Schmidt had provided false identification information, including a false name, date of birth, and social security number. Under the circumstances, Locke was justified in photographing Schmidt's tattoo as an identifying mark.

We must also consider the scope of the intrusion. Given the location of the tattoo, Locke required Schmidt to be no more exposed than necessary to permit photographing the tattoo, which minimized the invasion of Schmidt's privacy. The location of the search is also relevant. As Schmidt acknowledges in her brief, the photograph was taken in private, which limited the seriousness of the intrusion.[5] Pace v. City of Des Moines, 201 F.3d 1050 (8th Cir. 2000), on which Schmidt relies, is distinguishable. The argument in Pace centered around whether a Terry[6] stop was unreasonably delayed when police ordered Pace to remove his shirt in public in order to photograph his tattoo. Id. at 1053-54. By contrast, the photographing of Schmidt's tattoo occurred in private after she was already in police custody.

---

[5]In her brief, Schmidt argues that the privacy of the booking area increased her "fear and humiliation." Despite her subjective experience, there is no Fourth Amendment precedent for the contention that privacy enhances the invasion; the law is to the contrary. See Richmond, 490 F.3d at 1008 ("The law . . . [is] clear that strip searches should be conducted in an area as removed from the public view as possible . . . .").

[6]Terry v. Ohio, 392 U.S. 1 (1968).

-12-

Finally, we consider the manner in which the search was conducted. It is a closer question whether it was substantively reasonable for Locke to photograph Schmidt's tattoo himself, rather than enlisting a female officer to do so. See, e.g., Richmond, 490 F.3d at 1008. However, a female officer would be required only if Schmidt were subjected to a strip search for Fourth Amendment purposes. As discussed above, Schmidt was not subjected to the uniquely intrusive requirement that she disrobe completely. See Smook, 457 F.3d at 811 (plaintiff stripped only to her underwear; search was less invasive than if she were completely nude). Accordingly, Locke's photographing the tattoo himself does not make the search unreasonable. Schmidt vaguely alleges that Locke's manner was harassing or hovering, which would be relevant to the manner in which the search was conducted. See Richmond, 490 F.3d at 1008. However, this allegation was not supported by any competent evidence in opposition to summary judgment.[7] In her brief to the district court, Schmidt argued that Locke's purpose was revealed by his failure to run her record under her true name. This is the kind of speculation that, without more, will not suffice to defeat summary judgment. See Putman v. Unity Health Sys., Inc., 348 F.3d 732, 733-34 (8th Cir. 2003); Embry v. Lewis, 215 F.3d 884, 889 (8th Cir. 2000).

We affirm the district court's entry of summary judgment on Schmidt's Fourth Amendment claims.

---

[7]Nor was Schmidt's allegation on appeal–that Locke attempted to coerce her to disrobe completely–presented to the district court in opposition to summary judgment. Thus, we do not consider it on appeal. See Holland v. Sam's Club, 487 F.3d 641, 644 (8th Cir. 2007) ("nonmoving party must designate the specific genuine issues of material fact that preclude summary judgment"; arguments waived in the district court may not be considered on appeal).

B. Fourteenth Amendment Substantive Due Process.

Schmidt also argues that Locke's conduct violated her substantive due process rights. The Eighth Circuit has recognized a substantive due process violation in some instances of sexual misconduct by police officers. See Rogers v. City of Little Rock, 152 F.3d 790 (8th Cir. 1998). The standard for evaluating a substantive due process claim is whether the alleged "behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." Id. at 797 (internal citation omitted).

Schmidt cites a line of police officer sexual assault cases, in which sexual assault was held to be legally sufficient to establish a violation of substantive due process. See, e.g., Rogers, 152 F.3d at 797 (rape by uniformed police officer); Hawkins v. Holloway, 316 F.3d 777, 785 (8th Cir. 2003) ("repeated intentional touching of . . . breasts"); Haberthur v. City of Raymore, 119 F.3d 720, 724 (8th Cir. 1997) (fondling woman's breast under her clothing, caressing her body, and "making sexually suggestive remarks"). She asserts that her case is "somewhat similar" and that this court should find that "these events do 'shock the contemporary conscience.'" However, Schmidt does not allege that she was sexually assaulted, nor does she explain how the cited cases apply to the facts that she has alleged. The district court stated that "[t]here is absolutely no allegation that defendant Locke touched plaintiff, performed any type of sexual act upon plaintiff, or physically invaded plaintiff's bodily integrity in any manner." Schmidt does not point to any evidence that the district court overlooked, nor does she point to any case law to support the contention that conduct similar to that which she has alleged violates due process.

Since we find no constitutional violation, we need not address the issues of qualified immunity and municipal liability.

-14-

IV. Missouri Strip Search Claim.

Finally, Schmidt appeals the entry of summary judgment on her tort claim under Missouri's strip search law, Mo. Rev. Stat. § 544.193, against Locke.[8] We review the district court's grant of summary judgment de novo. Fed. R. Civ. P. 56(c); Green v. City of St. Louis, 507 F.3d 662, 666 (8th Cir. 2007). Summary judgment is appropriate if, viewing the evidence in the light most favorable to the nonmoving party, there is no genuine issue of material fact. Porter v. Williams, 436 F.3d 917, 920-21 (8th Cir. 2006). We also review the district court's interpretation of state law de novo. Gamradt v. Fed. Labs., Inc., 380 F.3d 416, 419 (8th Cir. 2004).

Section 544.193.2 prohibits strip searches of persons arrested for traffic offenses and non-felony offenses except in limited circumstances, which neither party argues were present in this case. Section 544.193.3 also requires that any strip search be conducted by a person of the same sex as the person being searched. Thus, summary judgment hinges on whether the photographing of Schmidt's tattoo was a strip search. The term "strip search" is defined by section 544.193.1(2):

> "Strip search" means the removal or rearrangement of some or all of the clothing of a person so as to permit an inspection of the genitals, buttocks, anus, breasts or undergarments of such person, including but not limited to inspections conducted visually, manually or by means of any physical instrument.

---

[8]Alternatively, Schmidt argues that any dismissal of her state law tort claim should be without prejudice. However, her state law claim was properly adjudicated on the merits and dismissed with prejudice following the grant of summary judgment. See Birchem v. Knights of Columbus, 116 F.3d 310, 314 (8th Cir. 1997) ("Because discovery was completed and the case ready for trial, the district court did not abuse its discretion in taking up and granting summary judgment on issues of state law on which there was little basis for dispute.").

Schmidt's statutory interpretation focuses on the use of the word "permit" in the statute, arguing that there is a violation any time the undergarments or genitals can be seen. However, Schmidt's interpretation removes the word "permit" from its context; the phrase used in the statute is "so as to permit." Mo. Rev. Stat. § 544.193.1(2). Missouri courts have interpreted this language to require removal or rearrangement of clothing "*for the purpose of conducting*" an inspection of the arrestee's genitals, buttocks, anus, breasts, or undergarments. State v. Esquivel, 987 S.W.2d 481, 483 (Mo. Ct. App. 1999) (emphasis added). The district court found that the search was for the purpose of inspecting Schmidt's tattoo, which is located near, but not on, her genitals. Schmidt does not dispute that she described the location of her tattoo to Locke as being on her lower stomach. Although she contends that her underwear was revealed during the photographing, she presents no evidence that the search was for the purpose of inspecting her underwear, nor even that her underwear was inspected. As such, Locke is entitled to judgment as a matter of law.

The district court stated an alternate basis for summary judgment: Locke was entitled to official immunity. Missouri law provides official immunity to "public officers acting within the scope of their authority" for discretionary acts or omissions. State ex. rel Hill v. Baldridge, 186 S.W.3d 258, 259 (Mo. 2006). Violation of a state statute does not remove the protection of official immunity. See Southers v. City of Farmington, 263 S.W.3d 603, 617 (Mo. 2008). Official immunity, however, provides no protection for an act taken with bad faith or malice. State ex rel. Twiehaus v. Adolf, 706 S.W.2d 443, 446 (Mo. 1986); Blue v. Harrah's North Kansas City, LLC, 170 S.W.3d 466, 479 (Mo. Ct. App. 2005).

Schmidt concedes that Locke was acting within the scope of his authority and that the decision to photograph Schmidt's tattoo was a discretionary act. Schmidt argues only that Locke was motivated by bad faith or malice and thus not entitled to immunity. In support of her argument, Schmidt offers only innuendo regarding Locke's mindset. Her argument relies on the same speculation and conjecture about

Locke's "ulterior motive" as does her § 1983 claim.  Although we view the evidence in the light most favorable to the nonmoving party, <u>Porter</u>, 436 F.3d at 920-21, such speculation does not raise a genuine issue of fact regarding Locke's alleged bad faith or malice.  <u>See</u> <u>Putman v. Unity Health Sys.</u>, 348 F.3d 732, 733-34 (8th Cir. 2003).  Thus, summary judgment in favor of Locke was appropriate on the alternate basis of official immunity.

V.

Accordingly, we affirm the district court's grant of summary judgment to Police Chief Edward Locke, Jr. and City of Bella Villa.

_____