Opinion issued December 6, 2012



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-12-00053-CV

_____

**HDW2000 256 EAST 49th STREET and
WESTBURY, INC., Appellants**

**V.**

**THE CITY OF HOUSTON, Appellee**

**On Appeal from the 113th District Court
Harris County, Texas
Trial Court Cause No. 2008-46371**

## MEMORANDUM OPINION

Appellants, HDW2000 256 East 49th Street, L.L.C. and Westbury, Inc. (collectively "Westbury") challenge the trial court's summary judgment in favor of appellee, the City of Houston ("the City") on Westbury's federal and state due

process claims and the trial court's substantial evidence review affirming orders of the City's Building and Standards Commission ("the Commission"). In two issues, Westbury contends that the trial court erred in finding that there is substantial evidence to support the orders of the Commission pertaining to their property and the trial court erred in granting summary judgment on their due process claims.

We affirm.

## Background

The Texas Legislature authorizes municipalities to regulate housing and other structures and issue orders requiring the repair, removal, and demolition of such structures, after notice and hearing. *See* TEX. LOC. GOV'T CODE ANN. §§ 214.001, .003 (West 2008 & Supp. 2012), §§ 214.0011–.002, .004–.005 (West 2008), § 214.0031 (West Supp. 2012). Section 214.0012 provides for judicial review of such orders. The Local Government Code authorizes the appointment of a local Building and Standards Commission to hear and determine cases alleging violations of health and safety ordinances. *See* TEX. LOC. GOV'T CODE ANN. §§ 54.031–.034, .036–.039, .041–.044 (West 2008), §§ 54.035, .040. The Commission conducts administrative hearings pursuant to this authority, and judicial review of its decisions is statutorily prescribed. *See id.* § 54.039(a);*see generally* Houston, Tex., Code of Ordinances ch. 10, art. IX, §§ 10–341–360 (2011) (formerly §§ 10–391–410). Because Westbury seeks judicial review of the

2

Commission's decision, section 54.039 will control.

Westbury owns several buildings, including a theater, commonly known as "Westbury Square." The three buildings at issue in this case were designated by the City as Buildings 1, 5, and 11, its theater. In 2008, the City initiated proceedings concerning the condition of the three buildings and on May 29, 2008 sent hearing notices to Westbury. The notices specified under which code sections of Chapter 10 of Houston's Code of Ordinances the three buildings were alleged to be substandard, dangerous, and otherwise in violation. The Commission conducted a hearing on June 18, 2008, and it issued separate orders on June 23, 2008 pertaining to each of the three buildings.

The Commission found that each of the three buildings was dangerous, substandard, and in violation of numerous sections of Chapter 10 of the City's Code of Ordinances. The Commission's orders required Westbury to obtain permits to repair the deficiencies that had made the structures dangerous within 30 days. The Orders also authorized the City to "remedy, alleviate, or remove any substandard or dangerous building" and place liens on the properties if the City took such measures.

On July 18, 2008, Westbury filed an Original Petition for Judicial Review, and the district court's review was limited to a hearing under the substantial evidence rule. TEX. LOC. GOV'T CODE ANN. § 54.039 (f) (West 2008).

3

Westbury later amended their petition to assert that the City had violated their state and federal procedural and substantive due process rights. On January 7, 2010, the City removed the case to the United States District Court for the Southern District of Texas. *See* 28 U.S.C. §§ 1331, 1343, and 1441. There, the City sought and was granted summary judgment on Westbury's state and federal substantive and procedural due process claims. The federal court expressly ruled on both the Texas and federal due process claims. The federal court then declined to exercise supplemental jurisdiction over the substantial evidence review of the Commission's decision, and it remanded those claims to the state court.

Back in state court, the City filed a motion for summary judgment on Westbury's federal and state substantive and procedural due process claims based on res judicata, specifically, issue preclusion. The trial court granted the City's summary-judgment motion on December 29, 2011, entering an order that dismissed Westbury's due process claims on the basis of res judicata.

The trial court conducted the substantial evidence review of the Commission's decision and issued its final judgment on December 14, 2011. In its judgment, the trial court ordered that Westbury take nothing, and it affirmed the Commission's orders.

## Substantial Evidence Review

In their first issue, Westbury argues that the trial court erred in affirming the

orders of the Commission because the orders are not supported by substantial evidence.

Substantial evidence review is limited in that it requires "only more than a mere scintilla," to support an agency's determination. *City of Dallas v. Stewart*, 361 S.W.3d 562, 566 (Tex. 2012) (quoting *Montgomery Indep. Sch. Dist. v. Dallas*, 34 S.W.3d 559, 566 (Tex. 2000)). Substantial evidence review "gives significant deference to the agency" and "does not allow a court to substitute its judgment for that of an agency." *R.R. Comm'n of Texas v. Torch Operating Co.*, 912 S.W.2d 790, 792 (Tex. 1995). Under the substantial evidence standard of review, "the evidence in the record actually may preponderate against the decision of the agency and nonetheless amount to substantial evidence." *Tex. Health Facilities Comm'n v. Charter Med.-Dallas, Inc.*, 665 S.W.2d 446, 452 (Tex. 1984). An agency's findings, inferences, conclusions, and decisions are presumed to be supported by substantial evidence, and the party appealing the agency decision has the burden of proving otherwise. *City of El Paso v. Pub. Util. Comm'n of Tex.*, 883 S.W.2d 179, 185 (Tex.1994).

The record of the proceedings before the Commission that was considered by the trial court included the Commission's notices to Westbury, tapes and DVD recordings of the June 18, 2008 hearing, transcripts of the hearing, photographs of

5

the property, and an eight-minute video of a walk-through of the property.[1] The same evidence is contained in the appellate record, including the eight-minute video.[2] A review of the record demonstrates that there is substantial evidence to support the Commission's determination that the three buildings at Westbury Square were in violation of the City's Code of Ordinances.

As determined below, the Commission heard testimony about the three buildings from City inspector Steve Gomez of the Houston Police Department ("HPD") Neighborhood Protection Corps. Gomez testified that he began inspections of the three buildings at Westbury Square in 2005 and he had last inspected the property on June 17, 2008, only one day before the Commission's

---

[1]    In the trial court, counsel for Westbury admitted that the record presented to the trial court for its substantial evidence review was the same record presented to the Commission, and he made no objection on that basis. On appeal, Westbury argues that the record of the Commission hearing is inadequate for judicial review purposes. Having failed to object to the record as it was submitted to the trial court, Westbury has waived any issue regarding the record. *See Pavelka v. Texas Workforce Comm'n*, No. 03-05-00293-CV, 2006 WL 2852507 *4 (Tex. App.–Austin Oct. 3, 2006) (finding waiver when party did not object in the administrative record offered into evidence at judicial review trial); *see also* TEX. R. APP. P. 33.1. Even if Westbury had not waived this complaint by failing to object to the trial court, this issue is part of Westbury's due process claims that were adjudicated in the federal court.

[2]    Westbury asserts in their reply brief that this eight-minute video was not included in the clerk's or reporter's record and is not part of the appellate record, thus making the City's reference and reliance on the video improper. However, the video is in fact part of the appellate record, contained in Volume 5 of the reporter's record. Therefore, the eight-minute video of the property is properly before this Court for review.

hearing. Other evidence offered by the City included photographs and the eight-minute video walk-through of the properties filmed the day before the hearing.

### *Building No. 1*

The Commission found that Building 1 was in violation of provisions 10-341, 10-343, 10-344, 10-361, and 10-451 of the City's Code of Ordinances. In its order, the Commission stated that Building 1 was a dangerous building within the terms of sections 10-361(a) (2, 3, 4, 5, 8, 11), (b) (1, 2, 3) and (c), and it stated that Building 1 was substandard within the terms of section 10-341(e).

These code provisions require that buildings within the City be free of dead trees, trash, refuse, glass, or building materials (section 10-341(e)); be secure from unlawful entry by vagrants, uninvited persons or children (section 10-361(a)(11)); not have 33% or more damage or deterioration to supporting members or 50% or more damage to non-supporting members or outside walls or coverings (section 10-361(a)(2)); have weather tight and waterproof roofs and walls (section 10-361(a)(3)); may not have loads improperly distributed on floors or roofs, may not have overloaded floors, and have floors and roofs of sufficient strength for the purpose used (section 10-361(a)(4)); parts of the property must be properly attached so as not to fall and injure people (section 10-361(a)(5)); not be damaged generally by various causes such as vandalism or elements of nature such that they are dangerous to the life, safety, or general health and welfare of the occupant or

7

inhabitants of the city (section 10-361(a)(8)); not be a danger to the public even though secured from entry (section 10-361(b)(1)); not have roofs, walls and floors that have holes allowing insects, rodents or pests to gain access for harborage to the extent that it presents a hazard to health or safety (section 10-361(b)(2)); if boarded-up, must be adequate to secure to prevent unauthorized entry or use of the building (section 10-361(b)(3)); if under a person's control, not be in a condition as to constitute a dangerous building (section 10-361(c)); be free of weeds, brush, rubbish and all other unsightly or unsanitary matter of whatever nature, holes that hold or are liable to hold stagnant water, "any other cause . . . liable to cause disease or produce, harbor, or spread disease germs of any nature or tend to render the surrounding atmosphere unhealthy, unwholesome, or obnoxious" (section 10-451(b)(10)).

This Court has reviewed the video walk-through. Almost the first three minutes of the video shows the condition of Building 1. During the hearing, inspector Gomez noted and explained the deficiencies in Building 1 as shown in the videotape. He pointed out that the videotape shows that a wall had been removed from the building and covered with plastic, a front portion of the building had been boarded up, but the soffits were still open, and a section of a wall that had once been open, had on it plywood that was falling down and holes and cracks. The video also shows roof damage, veneer damage and open soffits. Gomez

8

testified that there was deterioration of exterior walls on this building.

Inspector Gomez offered the following additional testimony regarding the condition of Building 1 and its Code deficiencies:

> CITY'S ATTORNEY:  In reference to 600 Westbury Square Building No. 1, do you find deficiencies of Chapter 10?
>
> MR. GOMEZ:  Yes, I do.
>
> CITY'S ATTORNEY:  You listed codes of 10-341(e), 361(a)(11), (a)(2), (a)(3), (a)(4), (a)(5), (a)(8), 361(b)(1), (b)(2), (b)(3), and (c).  Additionally, 10-451(b)(10). Describe the deficiencies you find with Building No. 1.
>
> MR. GOMEZ:  Building No. 1, it was a one-story, wood-frame commercial structure on concrete slab.  The exterior brick veneer had damage to it on one section of the wall.  The means to secure the structure didn't seem to be adequate securing that section of the wall.  It was covered with plastic, which some of the plastic coating seemed to be pulling away at some lower portions of the section of the house – of the structure.  In the back section of the property, it had open storage of building materials, rubbish and some high grass.
>
> . . . .
>
> MR. GOMEZ:  Well there are some supporting members – if you look at the exterior wall and see that plastic that's pulled away on some of the wall, there's some seals on the lower section and some supporting members that are there that are rotten and deteriorated behind that plastic that's being pulled away.

Gomez further testified that Building 1 was unsafe as to the health and welfare of the community because it provided access to vagrant activity and he had seen

9

evidence of vagrant activity in his initial inspection. He also noted that there were seals and supporting members with deterioration on the exterior wall causing improperly distributed loads at the ground level of the building in violation of section 10-361(a)(4).

Westbury asserts that there is not substantial evidence to support the Commission's finding that Building 1 was not secured from unauthorized entry in violation of section 10-361(b)(3). Inspector Gomez did testify that Building 1 was determined to be unsecured after his inspection in 2005 and it was later secured. However, at the time of the June 2008 hearing, some of the plywood that had been used to secure the building had started pulling away from the structure, thus making it once again unsecured from unauthorized entry.

We conclude that the record from the hearing contains more than a scintilla of evidence to support the Commission's findings that Building 1 was in violation of the listed city ordinances related to dangerous and substandard buildings. Accordingly, we hold that the trial court did not err in finding that the Commission's order relating to Building 1 is supported by substantial evidence.

*Building No. 5*

The Commission found that Building 5 was in violation of provisions 10-341, 10-343, 10-344, 10-361, and 10-451 of the City's Code of Ordinances. In its order, the Commission stated that Building 5 was a dangerous building within the

terms of sections 10-361(a) (2, 3, 4, 5, 8, 11), (b) (1, 2, 3) and (c), and it noted that

Building 5 was substandard within the terms of section 10-341(e).

Inspector Gomez testified that he found the following code deficiencies at

Building 5: 10-341(e), 361((a)(11), (a)(2), (a)(3), (a)(4), (a)(5), (a)(6), (a)(8),

361(b)(1), (b)(2), (b)(3), 361(c), and 10-451(b)(10).  In detailing the deficiencies of

Building 5, Gomez noted:

> Building No. 5 is a two-story – a two-story, wood-frame
> multifamily structure on concrete slab.  The exterior of
> the structure needs protective coating, has deterioration
> of the exterior veneer.  Due to the elements of nature, the
> roof is in great disrepair.  The means to cover this is with
> – they seem to have put plastic over the roof in the
> meantime.
> Also, the – okay.  Cover – loose surface materials, holes,
> cracks.  The property has high weeds, rubbish in the back
> portion of the property, open storage of building
> materials causing rat harborage conditions.  And this is in
> the back section of the property.

Inspector Gomez also noted and explained the deficiencies in Building 5 as

shown in the videotape including roof damage.  Although Gomez noted that the

structure had been previously secured where a lot of windows had been broken, he

noted deterioration to the exterior walls and that "pieces of things of the exterior

were hanging down."  Also, mold and deterioration existed on the lower portion of

the exterior walls of the building.  At the back portion of the building, some siding

was falling off.  Watching the video in the hearing Gomez explained:

11

This is one side of the building, can see this is a stairwell – wooden stairwell going to the upstairs. This is a back portion of this building, can see some deterioration, some of the siding falling. There is where he – attempts were made to secure the structure itself. There's plastic covering up the roof and section there of wall.

This is some of the rubbish and high weeds and open storage building material in the back. It's more plastic that's up there trying to cover the damage to the roof. High weeds, brush causing rat harborage conditions. More high weeds, Open storage building materials, brush, trash, rubbish.

It's more holes, cracks in the exterior walls of the building. More holes, cracks. Trash and rubbish you see here. See more deterioration of the soffits. See the extensive roof damage on top.

We conclude that the record from the hearing contains more than a scintilla of evidence to support the Commission's finding that Building 5 was in violation of the listed city ordinances related to dangerous and substandard buildings. Accordingly, we hold that the trial court did not err in finding that the Commission's order relating to Building 5 was supported by substantial evidence.

**Building No. 11**

The Commission found that Building 11 was in violation of provisions 10-343, 10-344, 10-361, and 10-451 of the City's Code of Ordinances. In its order, the Commission stated that Building 11 was a dangerous building within the terms of sections 10-361(a) (2, 3, 5), (b) (1, 2, 3) and (c), and it noted that Building 11

12

was substandard within the terms of section 10-343(3)(11).

Inspector Gomez, concerning Building 11, the theater, testified as follows:

CITY'S ATTORNEY: Are you familiar with 536 Westbury Square Building No. 11 known as a theater?

MR. GOMEZ: Yes, I am.

CITY'S ATTORNEY: Initially, were there deficiencies of Chapter 10 with that structure?

MR. GOMEZ: Yes, there was.

CITY'S ATTORNEY: You listed codes of 10-343(c)(11), 361(a)(2), (a)(3), (a)(5), 361(b)(1), (b)(2), (b)(3), and (c). Additionally, 10-451(b)(10). What were the deficiencies of that structure?

MR. GOMEZ: At that initial inspection, the exterior wall was taken down and it was boarded up again and the means to secure it started deteriorating again. But upon my last inspection yesterday, he actually repaired the whole rear wall adequately enough. And to my recommendation, that that building had been in compliance, everything was corrected on that building.

CITY'S ATTORNEY: So do you submit for the record that Building No. 11 is in com – Building No. 11, the theater, is in compliance and that none of the deficiencies of Chapter 10 in which you listed exist at this time?

MR. GOMEZ: The only thing that I saw was there's still – on the high section of the wall, there was a couple of bricks that were missing. But other than that, the rest of the wall was completed.

CITY'S ATTORNEY: I'll ask again, is Building No. 11 totally in compliance?

13

MR. GOMEZ:        Well –

CITY'S ATTORNEY:    According to the deficiencies of Chapter 10 in which you listed?

MR. GOMEZ:        No.

CITY'S ATTORNEY:    Can you please tell –

MR. GOMEZ:        It would still be probably Section 10-361(a)(3), roofs and walls that are not weather tight and waterproof that would still be in violation.

Gomez noted in his narration of the video walk-through that the theater had been painted and Hardiplank had been installed on the exterior wall, but there was still a hole on the corner of the outside brick veneer. Additionally, the video showed high weeds near Building 11, as well as some building materials left on the ground.

There is evidence in the record that Westbury did not have a permit to make the repairs it had made to Building 11. Inspector Gomez testified that he was not aware of a permit for Building 11 and had not seen one on the building. Other evidence showed permits for Buildings 1 and 5, but not for Building 11.

We conclude that the record from the hearing contains more than a scintilla of evidence to support the Commission's finding that Building 11 was not weather tight and waterproof. *See* Houston, Tex., Code of Ordinances ch. 10, art. IX, § 10-361 (2002). Additionally, the record from the hearing shows that the Commission heard evidence that Westbury had not obtained the appropriate permits to make the repairs that had been done to the building. And it could not show that the

14

completed repairs had been made in compliance with the City's Code provisions. We conclude that the record from the hearing contains more than a scintilla of evidence that Building 11 was not in compliance with the listed city ordinances related to dangerous and substandard buildings. Accordingly, we hold that the trial court did not err in finding that the Commission's order relating to Building 11 is supported by substantial evidence.

We overrule Westbury's first issue.

### Due Process Claims

In their second issue,[3] Westbury argues that the trial court erred in granting the City summary judgment on their claims that the Commission violated their due process rights under Texas Constitution, article 1, section 19 and the Fourteenth Amendment of the United States Constitution because (1) the Commission did not provide Westbury adequate notice; (2) Westbury was prevented from showing contradictory evidence during cross-examination and was not allowed proper cross-examination; (3) the Commission entered a demolition order without findings to support it; (4) the City's presentation of the evidence portrayed Westbury's buildings in a false light and provided a misleading perception of the general condition of the buildings; (5) the record from the Commission's proceedings was incomplete and inadequate for judicial review; and (6) Westbury

---

[3]     Our review of this issue on appeal is limited to the trial court's grant of the City's motion for summary judgment on the grounds of res judicata.

requested, but was not given the opportunity to review in advance the evidence that the City intended to present at the hearing, thus denying them an opportunity to properly prepare a defense for the Commission's hearing. In regard to its procedural and substantive due process claims, Westbury does not make any distinction in regard to its rights under article 1, section 19 of the Texas Constitution and the Fourteenth Amendment. Westbury does not argue that the Texas Constitution provides it with any greater protections than does the United States Constitution. It merely cites the Texas Constitution along with the Fourteenth Amendment.

Westbury's same due process claims framed the basis for the City's removal to federal district court. Once in federal court, the City moved for summary judgment on Westbury's due process claims, and the federal court granted the City's summary judgment, expressly ruling on both the Texas and federal due process claims. After the case was remanded back to state court, the City filed another motion for summary judgment on the basis of res judicata and issue preclusion asserting that Westbury's due process arguments had been fully and finally decided by the federal district court and could not be re-litigated in state court.

### Standard of Review

To prevail on any summary-judgment motion, including one based on res

16

judicata, a movant has the burden of proving that it is entitled to judgment as a matter of law and there is no genuine issue of material fact. TEX. R. CIV. P. 166a(c); *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995). When a defendant moves for summary judgment, it must either (1) disprove at least one essential element of the plaintiff's cause of action or (2) plead and conclusively establish each essential element of its affirmative defense, thereby defeating the plaintiff's cause of action. *Cathey*, 900 S.W.2d at 341; *Yazdchi v. Bank One, Tex., N.A.*, 177 S.W.3d 399, 404 (Tex. App.–Houston [1st Dist.] 2005, pet. denied). When deciding whether there is a disputed, "material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true." *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985). Every reasonable inference must be indulged in favor of the non-movant and any doubts must be resolved in its favor. *Id*. at 549.

### *Res Judicata*

In *Barr v. Resolution Trust Corporation*, the Texas Supreme Court noted that, broadly speaking, res judicata is the "generic term" for a group of related concepts concerning the conclusive effects given final judgments. 837 S.W.2d 627, 628 (Tex. 1992). Within this general doctrine, there are two principal categories: (1) "res judicata," also known as "claim preclusion," and (2) "collateral estoppel," also known as "issue preclusion." *Id*. "Res judicata or claim preclusion prevents

17

the relitigation of a claim or cause of action that has been finally adjudicated, as well as related matters that, with the use of diligence, should have been litigated in the prior suit." *Id*. Collateral estoppel or issue preclusion prevents relitigation of particular issues already resolved in a prior suit involving the same parties and the same issues of fact or law. *Id*.; *see also Acker v. City of Huntsville*, 787 S.W.2d 79, 80 (Tex. App.–Houston [14th Dist.] 1990, no writ). "The policies behind [res judicata] reflect the need to bring all litigation to an end, prevent vexatious litigation, maintain stability of court decisions, promote judicial economy, and prevent double recovery." *Barr*, 837 S.W.2d at 629.

### *Issue Preclusion*

The City argued res judicata on the basis of issue preclusion as the ground for summary judgment on Westbury's state and federal due process claims. Issue preclusion or collateral estoppel applies to block Westbury's relitigation of their due process claims making the trial court's grant of summary judgment appropriate. Issue preclusion bars the re-ligation of identical issues of fact or law that were actually litigated and essential to the judgment in a prior suit. *Van Dyke v. Boswell, O'Toole, Davis & Pickering*, 697 S.W.2d 381, 384 (Tex. 1985); RESTATEMENT (SECOND) OF JUDGMENTS § 27 (1982).

There are three elements necessary to establish issue preclusion: "(1) the facts sought to be litigated in the second action were fully and fairly litigated in the

18

prior action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action." *Bonniwell v. Beech Aircraft Corp.*, 663 S.W.2d 816, 818 (Tex. 1984). Those elements are present here.

First, both parties were permitted by the federal court to fully and fairly litigate Westbury's federal and state due process claims. The record reflects that in response to the City's motion for partial summary judgment on the due process claims, Westbury filed a lengthy response of almost 100 pages with exhibits. Westbury's operative pleading in federal court was the same as their pleading in state court. Westbury's due process claims were raised by the pleadings and briefed by the parties. And the federal court was competent to render a determination on Westbury's due process issues.

Next, "the appropriate question is whether the issue was recognized by the parties as important and by the trier of fact in the first action as necessary to the first judgment." *See Acker*, 787 S.W.2d at 81. Again, the factual assertions underlying Westbury's due process claims revolved around adequate notice and the hearing conducted by the Commission. We note that in neither the trial court below, nor in this Court, did Westbury make any distinction in regard to its rights to due process under the Texas Constitution and the United States Constitution. The record before us establishes that the factual assertions underlying Westbury's

19

procedural and substantive due process claims are the same and were essential to the first judgment.

There can be no doubt that the third element required for the application of issue preclusion, that the parties be cast as adversaries in the first action, exists here. Because this is the same litigation with the same parties upon removal to the federal court and on remand back to the state court, on that point there can be no dispute.

The broader and more general principal of res judicata also applies to block Westbury's relitigation of their state and federal due process claims. The preclusive effect of a federal judgment is determined by federal law. *Eagle Props., Ltd. v. Scharbauer*, 807 S.W.2d 714, 718 (Tex. 1990) ("[S]ince the first suit was decided in federal court . . . federal law controls the determination of whether res judicata will bar a later state court proceeding."). Under federal law, for the doctrine of res judicata to apply, four elements must be satisfied: (1) the parties must be identical or in privity; (2) the prior judgment must have been rendered by a court of competent jurisdiction; (3) there must have been a final judgment on the merits; and (4) the same cause of action must be involved in both cases. *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005); *see also Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652, (Tex. 1996); *Coal. of Cities for Affordable Util. Rates v. Pub. Util. Comm'n of Tex.*, 798 S.W.2d 560, 562-563

20

(Tex. 1990). The actions involve the same claims if they are based on "the same nucleus of operative facts." *Walker v. Anderson*, 232 S.W.3d 899, 912 (Tex. App.– Dallas 2007, no pet.); *In re Southmark Corp*., 163 F.3d 925, 934 (5th Cir.1999). Like Texas, the Fifth Circuit has adopted the transactional test of the Restatement (Second) of Judgments in determining whether res judicata applies. *Test Masters*, 428 F.2d at 571. "Under the transactional test, a prior judgment's preclusive effect extends to all rights of the plaintiff with respect to all or any part of the transaction, or series of commercial transactions, out of which the original action arose." *Id.*

Here, the four elements under the federal standard are met. The record establishes that the parties to the federal suit are the same. Indeed, the instant suit was initially filed by Westbury and removed to federal court by the City. The record also establishes that the same state and federal due process claims made by Westbury framed the basis for the City's removal of the suit to federal court and they were still made in Westbury's live pleading in state court after the case was remanded back to state court. And Westbury acknowledges that they pleaded the same due process claims in both federal and state court.

The judgment in the federal suit was rendered by a court of competent jurisdiction. The City removed Westbury's lawsuit under 28 U.S.C. §§ 1331, 1343, and 1441. The federal district court had jurisdiction once Westbury raised a federal question asserting that their civil rights had been violated. 28 U.S.C. §§

1331, 1343. And the City was entitled to remove the case to federal court. 28 U.S.C. § 1441.

Westbury's claims of substantive and procedural due process violations were concluded by a final judgment that reached the merits of its claims. *See Test Masters*, 428 F.3d at 571. As noted by the federal district court, "Finally, [the City] argues that Plaintiffs' substantive and procedural claims fail on the merits. The Court agrees." *HDW2000 256 East 49th Street, L.L.C. v. City of Houston*, H-10-70, 2011 WL 722618 at *4 (S.D. Tex. Feb. 22, 2011).

Westbury argues that the federal district court judgment was not final because if it were, there would be nothing left for the state court to decide. Westbury misses the point. A federal district court's grant of summary judgment on all federal claims and remand of all remaining state law claims in a partial-summary judgment is an appealable final order because there is nothing left for the federal court to decide. *See* 11 MOORE'S FEDERAL PRACTICE GUIDE § 56.130[2][a]; *see Morris v. T.E. Marine Corp*., 344 F.3d 439, 445 (5th Cir. 2003) (aspect of judgment that is distinct and separable from remand order is reviewable by federal appellate court); *Koch v. City of Del City*, 660 F.3d 1228, 1235 (10th Cir. 2011) (federal district court grant of summary judgment on federal claims and remanding remaining state law claims was final appealable order); *Porter v. Williams*, 436 F.3d 917, 919-20 (8th Cir. 2006) (remand of remaining state-law

claims, after the federal claims are resolved makes partial summary judgment a final order because there is nothing left for the federal district court to resolve).

In *Hyde Park Co. v. Santa Fe City Council*, the court noted that "[f]ederal appeals courts have consistently held . . . that they have jurisdiction to review a district court order dismissing federal claims on the merits where the district court subsequently exercised its discretion under [section] 1367 to remand supplemental state law claims to state court. Otherwise, a district court's order dismissing federal claims in such a situation would be effectively unreviewable." 226 F.3d 1207, 1209 n. 1 (10th Cir.2000) (citations omitted); *see also Guzman v. Mem'l Hermann Hosp. Sys.*, CIV.A. H-07-03973, 2009 WL 3837042 at *8 (S.D. Tex. Nov. 12, 2009).

As to the final element for res judicata requiring that the same cause of action must be involved, that is the case here. Again, the same due process claims raised by Westbury in the state court framed the basis for the City's removal of the suit to federal court, and the claims were still in Westbury's live pleading before the state court after remand of Westbury's state law claim for substantial evidence review of the Commission's decision.

We hold that the City met its summary-judgment burden of establishing that Westbury's due process claims are barred by res judicata. *See Adams v. Texas Bd. of Private Investigators and Private Sec. Agencies*, No. 03-96-00228-CV, 1997

WL 304172 at *4 (Tex. App.–Austin June 5, 1997, no writ) (holding that res judicata supported grant of summary judgment precluding federal claims that had been decided by federal court when case was remanded for consideration of state law claims).

Accordingly, we hold that the trial court did not err in granting the City summary judgment on Westbury's due process claims.

We overrule Westbury's second issue.

## Conclusion

We affirm the judgment of the trial court.

Terry Jennings
Justice

Panel consists of Justices Jennings, Higley, and Sharp.