# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
April 14, 2021 Session

## ALLAN F. WHITE JR., ET AL. v. BRADLEY COUNTY GOVERNMENT ET AL.

**Appeal from the Circuit Court for Bradley County**
No. V-16-493      Lawrence Howard Puckett, Judge

_____

### No. E2020-00798-COA-R3-CV

_____

A police officer pursued and shot a man whom she encountered outside her home at two in the morning. After the man died from his injuries, his parents and estate brought suit in the Bradley County Circuit Court against the officer, the sheriff who supervised her, and the county, alleging negligence and violation of the man's rights under federal law and the United States Constitution. Defendants removed the case to the United States District Court for the Eastern District of Tennessee ("the district court"). The district court granted summary judgment for the defendants on the federal civil rights claims and remanded the state law tort claims to the Circuit Court. On remand to the Circuit Court, the claims against the sheriff were voluntarily dismissed and the remaining defendants moved for summary judgment. In reliance on the district court's legal conclusions, the Circuit Court granted summary judgment to the police officer based on the doctrine of collateral estoppel and to the Bradley County government based on governmental immunity. Plaintiffs appealed. On appeal, we hold that collateral estoppel bars the claims against both the police officer and the county. Accordingly, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which FRANK G. CLEMENT JR., P.J., M.S., and ARNOLD B. GOLDIN, J., joined.

John M. Wolfe Jr., Chattanooga, Tennessee, for the appellants, Allan F. White Jr., and Marline White.

Thomas E. LeQuire, Chattanooga, Tennessee, for the appellees, Bradley County Government and Tiffany Goodwin.

# OPINION

## I. PROCEDURAL AND FACTUAL BACKGROUND

This case stems from the shooting death of Allan J. White III, ("Mr. White" or "White") by Bradley County police officer Tiffany Goodwin[1] ("Ms. Goodwin" or "Goodwin") on July 28, 2015. On July 26, 2016, Mr. White's parents, Allan White Jr. and Marline[2] White, as next of kin and on behalf of Mr. White's estate[3] (collectively, "Plaintiffs") filed a wrongful death suit against the Bradley County Government ("Bradley County"), Bradley County Sheriff Eric Watson ("Sheriff Watson") in his individual and official capacity, and Officer Tiffany Goodwin ("Ms. Goodwin") in her individual and official capacity (collectively, "Defendants") in the Circuit Court for Bradley County (the "trial court"). The complaint alleged that Ms. Goodwin killed Mr. White by use of excessive force, thereby depriving him of his rights under 42 U.S.C. § 1983[4] and the Fourth and Fourteenth Amendments of the United States Constitution; that Sheriff Watson and Bradley County were also responsible and liable for Mr. White's death and the violations of his constitutional rights due to the policies, practices, and customs of Sheriff Watson and the sheriff's department; and that Mr. White's death was caused by the negligence of Ms. Goodwin, Sheriff Watson, and Bradley County, and thus the Tennessee Governmental Tort Liability Act ("GTLA"), Tennessee Code Annotated § 29-20-205, conferred liability on Sheriff Watson and Bradley County.

### A. The district court proceedings

On August 8, 2016, Defendants removed the case to the federal district court. Defendants filed a Motion for Summary Judgment on January 22, 2018, on the grounds of qualified immunity for Ms. Goodwin and the failure of Plaintiffs to show any unconstitutional custom, policy, or practice of Sheriff Watson or Bradley County. The primary issue on appeal involves whether the trial court correctly determined that the district court's final judgment operated to bar the state law claims pursuant to the doctrine of collateral estoppel. Because our resolution of this issue requires a detailed examination

---

[1] At the time of the incident relevant to this appeal, Ms. Goodwin's surname was Oakley, and the record in this case has references to her both as Tiffany Oakley and Tiffany Goodwin. We will refer to her as Ms. Goodwin throughout this Opinion.

[2] Her name is spelled "Marlene" on some documents in the record.

[3] Allan F. White Jr. is the administrator of his son's estate.

[4] Section 1983 provides for civil liability against

> any person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws[.]

42 U.S.C. § 1983.

of the district court judgment, we will quote extensively from the district court's memorandum opinion.  According to the memorandum opinion:[5]

> Bradley County Tennessee police officer Tiffany Goodwin ("Goodwin") returned home while on duty around 2:00 a.m. on July 28, 2015.  As she pulled into her driveway, she saw a man—later identified as Allan J. White III ("White")—squat behind a truck parked near her house.  Goodwin exited her vehicle, shined her flashlight towards the man, and yelled "Sheriff's office, show me your hands."  Rather than yield, White took off running towards the back of the house. Goodwin radioed dispatch from her portable radio, relaying her location and requesting backup.  Flashlight and Taser in hand, Goodwin gave chase.

> She lost sight of White as he entered the woods behind her house.  Noting the direction he took, Goodwin cut through neighboring backyards, then veered left into the woods, aiming to cut off White's path.  As she crested an embankment, she found White laying facedown along a ditch, arms beneath him.  He faced the opposite direction, motionless.

> Goodwin approached. She stated again, "Sheriff's office, show me your hands."  This prompted White to roll over, but Goodwin ordered him back onto his stomach with his hands behind his back.  Kneeling beside him, Goodwin cuffed White's right wrist with her free hand,[6] but White's left arm remained underneath him.  After her orders to bring his left arm behind him were disregarded, Goodwin attempted to grab the arm.  This was met with resistance.  White jerked his right arm away, rolled over, and rose to his feet.  As White ripped his arm free, Goodwin pulled the trigger on the Taser.  Whether she had actually hit him, though, was unclear.

> Undeterred, White threw Goodwin to the ground by her collar.  As he did, Goodwin fired the Taser a second time, though she was again unsure if she had made contact.  While Goodwin was on her back, White climbed atop her, facing the opposite direction.  He put his knees on both of Goodwin's shoulders, effectively pinning her to the ground.  As the two grappled, White put his hands on Goodwin's face and neck, pushing down on her face, in what felt to Goodwin like an effort to choke her.[7]  With his right hand, White began to strike Goodwin's ribs on her side.

---

[5] Footnotes in the cited portions are in the original and have been re-numbered.  We have omitted the citations to the record.

[6] At this point, Goodwin had put away her flashlight and held the Taser in her left hand.

[7] Goodwin stated that she felt White's fingers in her mouth during the struggle.

Goodwin struggled beneath him. She attempted to push White off of her to no avail. Her orders to get off were disregarded. She attempted to access her radio, but it had been loosed from her shoulder during the altercation. And she was entangled in the wires of the Taser she had dropped moments prior in her attempts to push White aside. Fearing for her life, Goodwin grabbed her gun from its holster with her right hand.

Goodwin pointed the gun up over her face, unsure of precisely where she was aiming, and pulled the trigger. Still feeling White atop her, she fired at least once more.[8] At that point, White removed himself from Goodwin, yelling, "Ow, ow, okay, I'm done." Goodwin rose, located her flashlight and radio, and informed dispatch that shots were fired. She kept her gun trained on White, as he writhed on the ground, attempting to get up. Goodwin ordered that he remain on the ground and continued asking who he was. At some point, he responded, "I don't know you."[9]

Shortly thereafter, backup units and emergency medical services ("EMS") arrived. EMS first transported White to SkyRidge Medical Center in Cleveland, Tennessee, then to Erlanger Medical Center in Chattanooga, Tennessee, where he eventually died from his injuries.

On April 16, the district court granted summary judgment dismissing the § 1983 claims and constitutional violations against Ms. Goodwin, finding that Ms. Goodwin's conduct was "objectively reasonable." The district court also dismissed the claims against Sheriff Watson and Bradley County because:

Plaintiffs . . . have made no substantive response to Defendants' arguments regarding Bradley County's policies and procedures, nor Sheriff Watson's alleged liability—in fact, Plaintiffs made no mention of these claims at all in their response to the motion before the Court. As a result, Plaintiffs have abandoned these claims. **Brown v. VHS of Mich., Inc.**, 545 F. App'x 368, 372 (6th Cir. 2013) ("A plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment.").

The district court declined to exercise supplemental jurisdiction over the state law claims and remanded the case to the trial court. No appeal was taken from the judgment of the

---

[8] Goodwin expressed uncertainty as to how many times she fired her weapon. In her interview on the morning of the incident, Goodwin intimated she had fired twice but was unsure as to how many precisely. In her deposition on November 15, 2017, she suggested there may have been three shots fired. The autopsy revealed only two bullet wounds. A third bullet casing was never found.

[9] During an interview, Goodwin stated she did not personally know White but did know of him from high school. She denied ever having any type of relationship with him or ever engaging in any conversation with him, even in high school.

district court dismissing all of the federal claims against all Defendants.

## B. Proceedings upon the remand to the trial court

On July 13, 2018, Defendants filed a motion for summary judgment on the state law claims. Plaintiffs gave notice of non-suit of all claims against Sheriff Watson and the "official capacity" claims against Ms. Goodwin, and on December 19, the trial court dismissed those claims. On July 15, 2019, the trial court denied Bradley County and Ms. Goodwin's motion for summary judgment, stating its reasoning from the bench:

> When a situation is where you have a question of the intent of a party, you shouldn't grant summary judgment. And . . . [when] you have to rely upon that one witness and they have control over how that version comes out. And I find that to be this case. I can't grant summary judgment because of that.
>
> * * *
>
> [O]ur courts have stated that summary judgment is not proper where the outcome of a case hinges upon the credibility of witnesses.

Ms. Goodwin and Bradley County filed a motion to amend the judgment, in which they argued, in part:

> In considering Defendants' federal court motion for summary judgment, the District Court considered the same issue, facts and circumstances relating to Officer Goodwin's actions which are now before this Court. Plaintiffs did not appeal or otherwise challenge the District Court's conclusions and order and therefore the same are final. Therefore, Plaintiffs are now collaterally estopped from relitigating the reasonableness of Officer Goodwin's conduct.

Then on December 19, 2019, the trial court entered an additional order ("final order"), which clarified:

> On July 15, 2019, the Court entered its order denying Defendants' motion for summary judgment on grounds announced from the bench but only upon limited evidentiary issues. The Court did not rule on Defendants' motion for summary judgment on sovereign immunity or *res judicata* grounds.
>
> This matter was last before the Court November 4, 2019, for oral argument upon Defendants' motion to alter or amend the Court's July 15, 2019 order denying summary judgment. The motion asks the Court to rule

on two remaining grounds of their motion for summary judgment based on the county's sovereign immunity under Tenn. Code Ann. §§ 29-20-205([2])[10] and 29-20-310([a])[11] and *res judicata*.[12]

The order then granted summary judgment to both defendants. With respect to the claims against Bradley County, the final order stated:

> [T]he court . . . dismisses all claims against Defendant Bradley County Government on the basis of the county's sovereign immunity. The complaint against Bradley County Government arises out of an alleged violation of plaintiff decedent's civil rights and is therefore barred by the common law immunity of Bradley County. *See* **Cochran v. Town of Jonesborough, Tennessee**, [586 S.W.3d 909, 911 (Tenn. Ct. App. 2019)] and **Siler v. Scott**, [591 S.W.3d 84, 93 (Tenn. Ct. App. 2019), *appeal denied* (Oct. 11, 2019)]. In Tenn. Code Ann. § 29-20-[2]05(2) the legislature retained the common law immunity of Bradley County for claims arising out of injury from alleged violations of civil rights.

With respect to the claim against Ms. Goodwin, the final order stated:

> Plaintiffs' complaint against the county and Tiffany [Goodwin] in federal court alleged that [Ms. Goodwin] used excessive force under the circumstances. In [its] Memorandum Opinion, [the district court] specifically found that [Ms. Goodwin's] actions were "objectively reasonable" under the circumstances. [The district court] set forth [its] findings of fact and legal conclusions in [its] Memorandum Opinion. By order entered November 6, 2018 the entire federal court record was ordered to be made part of this court's record. . . .
>
> The Court has reviewed [the district court's] opinion alongside

---

[10] Tennessee Code Annotated § 29-20-205 provides, in pertinent part, that governmental entities are immune from suit "for injury proximately caused by a negligent act or omission of any employee within the scope of his employment . . . if the injury arises out of . . . civil rights[.]" Tenn. Code Ann. § 29-20-205(2).

[11] Tennessee Code Annotated § 29-20-310(a) provides:

The court, before holding a governmental entity liable for damages, must first determine that the employee's or employees' act or acts were negligent and the proximate cause of plaintiff's injury, that the employee or employees acted within the scope of their employment and that none of the exceptions listed in § 29-20-205 are applicable to the facts before the court.

[12] Although the trial court's order sometimes speaks in terms of res judicata, the order applies the test for collateral estoppel. As discussed in detail, *infra*, the question here involves collateral estoppel, rather than the related doctrine of res judicata.

Plaintiffs' complaint in this court with [the collateral estoppel] elements in view. The Court finds that the issues before the court are identical to the issues decided by [the district court]; that the same parties or those in privity litigated the issues and that those issues were decided on the merits by [the district court]; that the federal court judgment has become final; and that Plaintiff[s] had a full and fair opportunity in the earlier suit in federal court to litigate the issues now before the court.

* * *

[A]s in **Partin v. Scott**, [No. E2007-02604-COA-R3-CV, 2008 WL 4922412 (Tenn. Ct. App. Nov. 13, 2008),] the Plaintiff is collaterally estopped from relitigating the reasonableness of Defendant [Goodwin's] actions in the present action.

Plaintiffs timely appealed.

## II. ISSUES PRESENTED

Plaintiffs appeal, stating these issues for review:

1. In light of the Tennessee Supreme Court case of **Massengill v. Scott**, 738 S.W. 2d 629 (1987), did the trial judge err by using the Federal Court dismissal as a bar to the remanded State Court actions?
2. Did the Trial Judge err by not stating whether or not he would consider the credibility of the witness as fixed as of the date that the Federal Court issued its summary judgment?
3. Did the trial judge err by finding that Tennessee Code Annotated § 29-20-205(2) barred the Plaintiffs['] claims against the Defendants?

Defendants state the issues as follows:

1. Did the Trial Court properly dismiss Plaintiffs' case against Bradley County pursuant to the immunity provisions of Tennessee Code Annotated § 29-20-205?
2. Did the Trial Court properly grant Defendants['] Motion for Summary Judgment and dismiss the case against Tiffany Oakley Goodwin, based on the U.S. District Court's dismissal of the same case in the Doctrine of Collateral Estoppel?
3. Did the Trial Court properly deny Plaintiffs' Motion for Finding of Fact because of its dismissal of the case?

## III. STANDARD OF REVIEW

The trial court resolved the underlying action by way of summary judgment. Summary judgment is appropriate when no genuine issues of material fact exist, and the movant meets its burden of proving that it is entitled to a judgment as a matter of law. Tenn. R. Civ. P. 56.04; *Bryant v. Bryant*, 522 S.W.3d 392, 399 (Tenn. 2017). It is "a preferred vehicle for disposing of purely legal issues." *Hawkins v. Case Mgmt. Inc.*, 165 S.W.3d 296, 299 (Tenn. Ct. App. 2004) (citing *Byrd v. Hall*, 847 S.W.2d 208 (Tenn. 1993); *Bellamy v. Fed. Express Corp.*, 749 S.W.2d 31 (Tenn. 1988)). Because the decision to grant a summary judgment motion is a question of law, our review is de novo with no presumption of correctness. *Tatham v. Bridgestone Americas Holding, Inc.*, 473 S.W.3d 734, 748 (Tenn. 2015). Therefore, "we make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied." *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015). Those requirements are that the filings supporting the motion show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04. We must take the strongest view of the evidence in favor of the nonmoving party, allowing all reasonable inferences in its favor. *Perkins v. Metro. Gov't of Nashville*, 380 S.W.3d 73, 80 (Tenn. 2012).

Summary judgment in this case was granted upon the trial court's determination that collateral estoppel applied to the material factual issues. "[S]ummary judgment is an appropriate vehicle for resolving a collateral estoppel claim." *Mullins v. State*, 294 S.W.3d 529, 535 (Tenn. 2009). Whether collateral estoppel applies to a particular set of facts is a question of law. *Torres v. Bridgestone/Firestone N. Am. Tire, LLC*, 498 S.W.3d 565, 573 (Tenn. Ct. App. 2016). Hence, our review of that determination is de novo with no presumption of correctness afforded the trial court. *Id.*

## IV. ANALYSIS

In their response to Defendant's statement of undisputed material facts, Plaintiffs ostensibly disputed many of the facts; however, most of the disputes were not supported by references to evidence in the record as required by Rule 56 of the Tennessee Rules of Civil Procedure, but rather relied on argument by counsel. For example:

> 4. Officer Goodwin got out of her patrol car with her flashlight and taser in hand, identified herself as a police officer, and directed that the individual she saw, who we now know to be Allan J. White, III ("White"), show her his hands. See Officer Goodwin deposition, pages 88-89 and page 93.
>
> ANSWER: What Officer Goodwin did after she got out of her car is unknown, except to her. That she exited her vehicle at some time is true. What she directed White to do is known only to her; again, she failed to

activate the sound technology that could have given us decisive answers. She did not activate the sound devices, either on her uniform or her car. Thus, this matter remains in dispute.

See page 66 of Officer Tiffany Goodwin's deposition, in which she admits to have chosen to not make use of the available recording technology.

Plaintiffs' response above does not set forth specific facts as required by Rule 56. Instead, Plaintiffs make the argument that Ms. Goodwin should not be believed because she did not activate the recording devices available to her. A party's "reliance on its own argument . . . does not satisfy the demands of Rule 56.04 or create a genuine issue of material fact that would preclude summary judgment." *Clarksville Towers, LLC v. John Straussberger, et al.*, No. M2020-00756-COA-R3-CV, 2021 WL 1884636, at *6 n.2 (Tenn. Ct. App. May 11, 2021). Plaintiffs repeat, several times, this approach of "disputing" Ms. Goodwin's testimony by responding that there is no recording of the events. Plaintiffs also respond by making conclusions for which Plaintiffs cite no facts to support, e.g., "The assault described here would have led to physical damage far in excess of what the medical records of the officer show" and by arguments such as:

That [Ms. Goodwin] found [Mr. White] not facing in her direction shows that the decedent was not keeping a watch on her movements. It further tends to prove that he was moving and fell face-forward, most likely from a bullet wound that he received seconds before, on or near her driveway.[13]

In their denials, Plaintiffs failed to, "by affidavits or one of the other means provided in Tennessee Rule 56, 'set forth specific facts' *at the summary judgment stage* 'showing that there is a genuine issue for trial.'" *Id.* at *3 (quoting Tenn. R. Civ. P. 56.06). As the nonmoving party, Plaintiffs were required to "'do more than simply show that there is some metaphysical doubt as to the material facts.'" *Rye*, 477 S.W.3d at 265 (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). In those instances where Plaintiffs failed to support their disputed facts as required by Rule 56.06, we deem the facts admitted. *See Duncan v. Lloyd*, No. M2004-01054-COA-R3-CV, 2005 WL 1996624, at *5 (Tenn. Ct. App. Aug. 18, 2005) ("Any fact not *specifically* disputed *with* citations to the record to support the alleged dispute may be deemed admitted."); *Kidd v. Dickerson*, No. M2018-01133-COA-R3-CV, 2020 WL 5912808, at *11 (Tenn. Ct. App. Oct. 5, 2020), *perm. app. denied* (Feb. 4, 2021) (holding that alleged disputed statements were deemed admitted when plaintiff's responses were not supported by citations to the

---

[13] An example of evidence that could have been used to support this argument may have included an affidavit from a witness competent to testify that either Ms. Goodwin's or Mr. White's injuries were not consistent with her explanation of events. No such evidence of any kind was offered to support these arguments.

record); *see also* **Martin v. Norfolk S. Ry. Co.**, 271 S.W.3d 76, 86 n.3 (Tenn. 2008) ("[A]rgument of counsel is not evidence.").

In our view, the undisputed facts established at the summary judgment stage reflected the following: On July 28, 2015, at around two in the morning, Ms. Goodwin pulled into her driveway at her home and saw a man—later identified as Mr. White—near her home. With her taser in hand, Ms. Goodwin got out of her vehicle, shined her flashlight toward Mr. White, identified herself as an officer, and directed Mr. White to show her his hands. Mr. White did not reply, and ran toward the back of Ms. Goodwin's house. She radioed police dispatch from her portable radio and requested backup, and then pursued him. Ms. Goodwin lost sight of Mr. White, but continued in the general direction that she had seen him run, and when she found him, he was lying face down in a ditch. She asked him to identify himself, but he did not respond. Ms. Goodwin told Mr. White to put his hands behind his back. He put one hand behind his back, which she was able to cuff. After he repeatedly refused to give her his other hand, Ms. Goodwin attempted to use her taser on Mr. White, but he got off the ground and grabbed her, taking her to the ground. She attempted to tase him a second time, but was not certain whether she made contact. Mr. White climbed on top of Ms. Goodwin, held her down with his knees on her shoulders, and put his hands on her face and neck, making her feel smothered. Fearing for her life, Ms. Goodwin pulled her gun from her holster and fired, unable to take aim because of Mr. White's position relative to her gun. She fired at least two shots before she was free from Mr. White. Shortly thereafter, emergency medical services transported Mr. White to receive medical care. He died from his injuries.[14]

Plaintiffs further argue that there are disputed facts because they offered the affidavits of two individuals, Carrie Green and Devon Cooper, and that

> [their] sworn statements tend to prove that the Officer and the Plaintiff had a personal relationship. Officer [Goodwin] denies such a thing, but the conflict in the testimony must be resolved before we can determine what the nature of their relationship was in the early hours of July 25, 2015[.]

The summary judgment standard does not require all facts to be undisputed, but that no material facts are disputed. "A dispute of material fact is that which 'must be decided in order to resolve the substantive claim or defense at which the motion is directed.'" **Tatham**, 473 S.W.3d at 749 (quoting **Byrd**, 847 S.W.2d at 215). Here, the dispositive issue involves whether the final judgment in the district court precludes Plaintiff's claim of negligence raised in this case. It is not necessary to determine whether Ms. Goodwin and Mr. White knew each other in order to resolve whether Plaintiffs are collaterally estopped from asserting negligence in the trial court. Therefore, it is not a material fact.

---

[14]At this juncture, we note that these facts are in accord with those relied upon by the district court. *Supra*, § I.A.

- 10 -

Based on our review of the record, we conclude that there are no disputed material facts. Therefore, we will consider whether summary judgment was proper based on the legal issues presented.

Plaintiffs' negligence claims against Defendants are predicated on the same set of circumstances that underlie Plaintiffs' federal civil rights claim. Plaintiffs alleged that Ms. Goodwin negligently caused the death of Mr. White and harm to Plaintiffs because she "owed a duty to exercise reasonable care in handling the situation," and that she "violated that duty causing foreseeable harm to [Mr. White]." Moreover, Plaintiffs alleged that Bradley County was "negligent in its hiring, retention, and supervision of employees," thus causing injuries to Mr. White and to Plaintiffs, and that, pursuant to the GTLA (specifically Tennessee Code Annotated § 29-20-205) Bradley County was not immune from suit because the injuries were caused by the negligent acts or omissions of an employee acting within the scope of her employment. In their motion for summary judgment, Defendants argued, *inter alia*:

> In considering Defendants' federal court motion for summary judgment, the District Court considered the same issue, facts and circumstances relating to Officer Goodwin's actions which are now before this Court. The District Court decided based on the exact same facts and circumstances that Officer Goodwin's conduct was objectively reasonable after Plaintiffs were given a full and fair opportunity to challenge the same and in fact opposed and challenged Officer Goodwin's conduct. Plaintiffs did not appeal or otherwise challenge the District Court's conclusions and order and therefore the same are final. Therefore, Plaintiffs are now collaterally estopped from re-litigating the reasonableness of Officer Goodwin's conduct. As a result, summary judgment must be granted.

Collateral estoppel, or issue preclusion, is a court-made doctrine that bars the same parties from relitigating in a second suit issues that were raised and determined in a prior suit. *Bowen ex rel. Doe v. Arnold*, 502 S.W.3d 102, 107 (Tenn. 2016). The doctrine applies both to legal and factual issues. *State ex rel. Cihlar v. Crawford*, 39 S.W.3d 172, 179 (Tenn. Ct. App. 2000). Our Supreme Court has explained:

> The party invoking collateral estoppel has the burden of proof. To prevail with a collateral estoppel claim, the party asserting it must demonstrate (1) that the issue to be precluded is identical to an issue decided in an earlier proceeding, (2) that the issue to be precluded was actually raised, litigated, and decided on the merits in the earlier proceeding, (3) that the judgment in the earlier proceeding has become final, (4) that the party against whom collateral estoppel is asserted was a party or is in privity with a party to the earlier proceeding, and (5) that the party against whom collateral

estopppel is asserted had a full and fair opportunity in the earlier proceeding
to contest the issue now sought to be precluded.

*Mullins*, 294 S.W.3d at 535 (citations omitted). Collateral estoppel applies "when it affirmatively appears that the issue involved in the case under consideration has already been litigated in a prior suit between the same parties, even though based upon a different cause of action, if the determination of such issue in the former action was necessary to the judgment." *Clark v. Sputniks, LLC*, 368 S.W.3d 431, 437 (Tenn. 2012) (citation and quotation marks omitted). This doctrine applies "even [when] the prior case was in Federal Court and the subsequent suit is brought in a State Court," *Whitsey v. Williamson Cty. Bank*, 700 S.W.2d 562, 564 (Tenn. Ct. App. 1985). Our Supreme Court has noted:

> The decisions of the federal courts are entitled to full faith and credit. U.S. Const. art. IV, § 1; Restatement (Second) of Judgments § 87 cmt. a. The preclusionary rules serve to "promote the comity between state and federal courts that has been recognized as a bulwark of the federal system." *Allen v. McCurry*, 449 U.S. at 96, 101 S. Ct. 411. Thus, Tennessee courts have given preclusive effect to the decisions of federal courts. *See, e.g.*, *Whitsey v. Williamson County Bank*, 700 S.W.2d 562, 564 (Tenn. Ct. App. 1985) (holding that the summary dismissal of a claim in federal court provided a sufficient basis for invoking res judicata in state court).

*Mullins*, 294 S.W.3d at 537 n.3 (Tenn. 2009). "Determinations of an issue or issues that are not necessary to a judgment have the characteristics of dicta and will not be given preclusive effect." *Id.* at 535. Moreover, "an issue need not be subject to a full evidentiary and adversarial trial to be 'actually litigated'"; on the contrary, "'[t]he requirement . . . is generally satisfied if the issue was properly raised by the pleadings or otherwise placed in issue and was actually determined in the prior proceeding." *In re Bridgestone/Firestone*, 495 S.W.3d 257, 268 (Tenn. Ct. App. 2015) (quoting *Mullins*, 294 S.W.3d at 536).

Citing *Massengill v. Scott*, 738 S.W.2d 629 (Tenn. 1987), Plaintiffs argue that a dismissal by the district court is not a bar to the remanded state court actions. Plaintiffs' reliance on that case is misplaced. In *Massengill*, "the plaintiffs filed a complaint in the U.S. District Court for the Eastern District of Tennessee, alleging that the defendants . . . had deprived them of certain constitutional rights thereby entitling them to damages as provided by 42 U.S.C. § 1983" and also alleged several tort claims under state law. 738 S.W.2d at 630. The federal court declined to exercise supplemental jurisdiction over the state law tort claims and submitted the civil rights claim to the jury, which returned a general verdict for the defendants. *Id.* The plaintiffs then filed their tort claims in an appropriate state court. *Id.* The trial court granted summary judgment to the defendants based on *res judicata* and collateral estoppel. *Id.* After this Court affirmed the trial court's holding, the plaintiffs appealed to the Tennessee Supreme Court, which held that *res*

*judicata* did not apply "because the cause of action in the state court [was] not the same as the cause of action in the United States District Court," *id.* at 631, nor did collateral estoppel apply based on the evidence in the record, *id.* at 632.

Plaintiffs, in their reliance on **Massengill**, seem to conflate *res judicata* (claim preclusion) with collateral estoppel (issue preclusion). Although the doctrines necessarily overlap in many instances, they are not the same. The Supreme Court has explained:

> The doctrine of res judicata bars a second suit between the same parties or their privies on the same cause of action with respect to all issues which were or could have been litigated in the former suit.[15]   Collateral estoppel operates to bar a second suit between the same parties and their privies *on a different cause of action* only as to issues which were actually litigated and determined in the former suit.

*Id.* at 631 (emphasis added). Plaintiffs embrace the Supreme Court's *res judicata* reasoning in **Massengill** while disregarding its reasoning with respect to collateral estoppel. The Court stated:

> Because in the instant action the record does not disclose what issues were defined and submitted to the jury for their determination and since the jury's verdict was only a general verdict for the defendant, this record does not afford a basis for supporting a summary judgment for the defendant on the basis of collateral estoppel.

*Id.* at 632. Like in **Massengill**, Plaintiffs' state law claims are not barred by *res judicata* because they seek recovery under state law claims which are distinct causes of action from the civil rights claims which were dismissed with prejudice. However, unlike in **Massengill**, the record in this case—specifically the district court's memorandum—is clear as to which legal and factual issues were decided in the federal proceedings. Hence, the holding in **Massengill** does not bar the application of collateral estoppel to the case before us, and we will now consider whether the record supports the application of the doctrine.

A defendant moving for summary judgment may prevail by negating an essential element of the plaintiff's claim or by showing that the plaintiff cannot prove that element

---

[15] A party asserting a *res judicata* defense has the burden of proving the following elements:

> (1) that the underlying judgment was rendered by a court of competent jurisdiction, (2) that the same parties or their privies were involved in both suits, (3) that the same claim or cause of action was asserted in both suits, and (4) that the underlying judgment was final and on the merits.

*Elvis Presley Enterprises, Inc. v. City of Memphis*, 620 S.W.3d 318, 324 (Tenn. 2021).

at trial. *Perkins*, 380 S.W.3d at 80. Thus, if the district court resolved an issue or issues that negate an element of Plaintiffs' negligence claims, then summary judgment is proper. Negligence is essentially "the failure to exercise reasonable care." *Giggers v. Memphis Hous. Auth.*, 277 S.W.3d 359, 364 (Tenn. 2009). To make out a prima facie claim for negligence, a plaintiff must establish the following elements: "'(1) a duty of care owed by defendant to plaintiff; (2) conduct below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate, or legal, cause.'" *Id.* (quoting *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995)). "'Duty is a legal obligation to conform to a reasonable person standard of care in order to protect others against unreasonable risks of harm.'" *Grogan v. Uggla*, 535 S.W.3d 864, 871 (Tenn. 2017) (quoting *Satterfield v. Breeding Insulation Co.*, 266 S.W.3d 347, 355 (Tenn. 2008)). To recover for negligent hiring, supervision, or retention of an employee, "in addition to the elements of a negligence claim [, a plaintiff must establish] that the employer had knowledge of the employee's unfitness for the job." *Doe v. Catholic Bishop for Diocese of Memphis*, 306 S.W.3d 712, 717 (Tenn. Ct. App. 2008).

> In its memorandum opinion, the district court stated:
>
> The first question the Court addresses . . . is whether Goodwin violated White's Fourth Amendment rights in her use of deadly force during their encounter.
>
> To this end, The Court must ask "whether [Goodwin's] actions, in light of the totality of the circumstances, were objectively reasonable." *Kostrzewa [v. City of Troy]*, 247 F.3d [633] at 639 [6th Cir. 2001]. "[T]he specific facts of the case are key." *Id.*

The Fourth Amendment protects "[t]he right of the people to be secure in their person . . . against unreasonable . . . seizures." [16] U.S. Const. amend. IV. Therefore, whether Ms. Goodwin's conduct was reasonable was necessary to the resolution of the issues before the district court. With respect to the reasonableness of Ms. Goodwin's conduct, the district court concluded:

> Goodwin happened upon White crouching behind a truck parked near her house in the middle of the night. She immediately identified herself and ordered him to yield. Rather than comply, White sprinted behind the house towards the woods. Goodwin radioed for backup, pursued, and found White hiding in a ditch. She ordered he remain supine, hands behind his back, and approached. She then attempted to handcuff him. When White resisted and

---

[16] For purposes of the Fourth Amendment, a seizure occurs "when there is a governmental termination of freedom of movement through means intentionally applied." *Brower v. Cty. of Inyo*, 489 U.S. 593, 597 (1989) (emphasis removed).

rose to his feet, Goodwin twice fired her Taser to no avail. White then threw her down, climbed onto her, and began to choke Goodwin and strike her ribs. Beneath White, Goodwin repeatedly demanded White remove himself, which was ignored, and struggled to push him aside, unsuccessfully. Only when Goodwin feared for her life did she resort to deadly force. Furthermore, Goodwin used no additional force once White had climbed off her, holding White at gunpoint until backup had arrived. Though Goodwin did not observe White commit a crime (beyond trespassing near her house in the middle of the night), White "actively resist[ed] arrest," "attempted to evade arrest by flight," and "pose[d] an immediate threat" to Goodwin as he assaulted her on the ground. *Kostrzewa*, 247 F.3d at 639.

As such, the Court finds Goodwin's conduct objectively reasonable.

(Citations to the record omitted.)

State courts are not reviewing courts for federal courts, so we do not re-examine the correctness of the district court's conclusion. Our Supreme Court has noted:

> [T]he doctrine of collateral estoppel do[es] not hinge on the correctness of the judgment in the federal proceeding. There is no question that the central risk of invoking the preclusionary doctrines (collateral estoppel and res judicata) is the possibility that the decision in the first proceeding may be mistaken. 18 *Federal Practice and Procedure* § 4416, at 398. However, even an erroneous judgment is entitled to preclusive effect as long as all the other prerequisites have been met, *see Creech v. Addington*, 281 S.W.3d 363, 376 n.15 (Tenn. 2009) (quoting *Warwick v. Underwood*, 40 Tenn. 238, 241 (1859)); *Moulton v. Ford Motor Co.*, 533 S.W.2d 295, 296 (Tenn. 1976), unless the parties have engaged in extrinsic fraud or collusion, *N.Y. Life Ins. Co. v. Nashville Trust Co.*, 292 S.W.2d 749, 754–55 (1956) (a judgment obtained through extrinsic fraud would not support a res judicata claim); 18 *Federal Practice and Procedure* §§ 4423, at 601–02 & 4426, at 684.

*Mullins*, 294 S.W.3d at 537 n.3 (parallel citations omitted). If the Plaintiffs disagreed with the findings of the district court, with regard to credibility or any other issue, the appropriate remedy was a timely appeal of that final judgment. *See Partin v. Scott*, No. E2007-02604-COA-R3-CV, 2008 WL 4922412, at *11 (Tenn. Ct. App. Nov. 13, 2008) ("If Plaintiffs disagreed with the result reached by the District Court, they could and should have filed a timely appeal from that judgment, but they did not."); *see also Haase v. Countrywide Home Loans, Inc.*, 748 F.3d 624, 628–29 (5th Cir. 2014) (remand order constituted final judgment permitting appeal of district court's contemporaneous orders granting summary judgment in favor of defendants on federal claim and dismissing certain

state claims); ***Porter v. Williams***, 436 F.3d 917, 920 (8th Cir. 2006) (remand order constituted final order that enabled review of district court's prior order granting partial summary judgment); *cf.* ***Hyde Park Co. v. Santa Fe City Council***, 226 F.3d 1207, 1209 n.1 (10th Cir. 2000) ("Federal appeals courts have consistently held . . . that they have jurisdiction to review a district court order dismissing federal claims on the merits where the district court subsequently exercised its discretion under § 1367 to remand supplemental state law claims to state court.") (collecting cases).

Based on the foregoing, we conclude that the undisputed facts and the district court's conclusion that Ms. Goodwin's conduct was "objectively reasonable" effectively negates a required element of the state tort negligence claims, that of breach of duty. As we have previously explained:

> Once it is determined that a defendant owed a plaintiff a legal obligation to conform to a reasonable person standard of conduct, i.e., a duty—the question becomes whether the defendant failed to exercise reasonable care under the circumstances, i.e., whether the defendant breached the duty. What the defendant must do, or must not do, is a question of the standard of conduct required to satisfy the duty.
>     Ordinary or reasonable care is the care an ordinarily prudent person would take under the circumstances. . . .

***Marla H. v. Knox Cty.***, 361 S.W.3d 518, 537 (Tenn. Ct. App. 2011) (brackets, quotation marks, and internal citations omitted). In other words, "[a] breach of duty exists only if the defendant has not exercised reasonable or ordinary care." ***Id.*** at 538. The district court, however, has already conclusively resolved the question of whether Ms. Goodwin failed to exercise reasonable care. Thus, the question of whether Ms. Goodwin breached a duty for purposes of negligence is identical to the issue adjudicated by the district court— whether Ms. Goodwin's actions were "objectively reasonable." ***Mullins***, 294 S.W.3d at 535.

Moreover, the question of whether Ms. Goodwin's conduct was reasonable was necessary for the resolution of the claims before the district court.[17] The question was also fully and fairly litigated between the same parties, and the judgment of the district court is

---

[17] Although Plaintiffs point out this requirement for the application of collateral estoppel in their brief, they offer no argument that the trial court erred in its conclusion that this requirement was met. *See generally* ***Sneed v. Bd. of Pro. Resp. of Supreme Ct.***, 301 S.W.3d 603, 615 (Tenn. 2010) ("It is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her, and where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived.").

final.[18] *See, e.g.*, **Porter**, 436 F.3d at 920. Therefore, the outcome in federal court and the application of the doctrine of collateral estoppel effectively precludes the Plaintiffs from proceeding on the negligence claim against Ms. Goodwin. **Mullins**, 294 S.W.3d at 535.

Plaintiffs' claims against Bradley County for negligent hiring, supervision, and training necessarily depend on a finding that Ms. Goodwin was negligent, both logically and statutorily under the GTLA. Subject to statutory exceptions, governmental entities are immune from suit for actions of the government that fall within "the exercise and discharge of any of their functions, governmental or proprietary." Tenn. Code Ann. § 29-20-201(a). As previously discussed, one exception to the general grant of immunity applies when an injury is "proximately caused by a negligent act or omission of any employee within the scope of his employment," except when one of the enumerated exceptions contained in that statute is applicable. Tenn. Code Ann. § 29-20-205. In order to remove immunity under this section, the following requirements must be met:

> The court, before holding a governmental entity liable for damages, *must first determine that the employee's or employees' act or acts were negligent* and the proximate cause of plaintiff's injury, that the employee or employees acted within the scope of their employment and that none of the exceptions listed in § 29-20-205 are applicable to the facts before the court.

Tenn. Code Ann. § 29-20-310(a) (emphasis added). Ms. Goodwin's negligence is therefore a necessary element to a finding that Bradley County is liable for negligence. Because Plaintiffs are collaterally estopped from asserting that Ms. Goodwin was negligent, the tort claims against Bradley County are also barred by collateral estoppel.[19]

Based on the foregoing, we conclude that Plaintiffs' negligence claims against both Ms. Goodwin and Bradley County fail as a matter of law. Accordingly, we affirm the trial court's grant of summary judgment in favor of Ms. Goodwin and Bradley County.

As a final matter, we consider the trial court's denial of Plaintiffs' Rule 52 Motion. Following the trial court's final order, Plaintiffs filed a "Motion for Findings of Fact (TRCP52)" which stated:

> COME the Plaintiffs, by and through undersigned counsel, and hereby ask the Court to make factual finding pursuant to TRCP 52 with regard to the

---

[18] Plaintiffs do not appear to dispute these requirements in their brief either. *See id.*

[19] The trial court determined that Bradley County was immune from suit because the gravamen of Plaintiffs' claim against it sounded in civil rights. Tennessee Court Annotated § 29-20-205(2) provides that governmental entities are immune from suit in tort when the governmental employee's negligent act which causes an injury arises out of a civil rights violation. Our holding that collateral estoppel bars re-litigation of the issue of negligence pretermits the need to review the trial court's determination that Bradley County was immune from suit in this case. That issue is therefore pretermitted.

credibility of the individual Defendant as well as to her intent, motive, and purpose.

Plaintiffs would also like a ruling on whether the Court is holding that all issues regarding the credibility of the individual Defendant, or that of any other witness or party, became fixed at the time that Judge Collier issued his 2018 ruling.

On appeal, Plaintiffs appear to take issue with the trial court's decision to first deny summary judgment due to unresolved disputes concerning credibility, only to later grant Defendants' motion without "retract[ing] or contradict[ing]" its earlier ruling. Plaintiffs also ask us to determine whether the trial court "err[ed] by not stating whether or not [it] would consider the credibility of the witness as fixed as of the date that the Federal Court issued its summary judgment." In their brief, Plaintiffs state that they offered two "sworn statements [that] tend to prove that [Ms. Goodwin] and [Mr. White] had a personal relationship," and Plaintiffs assert that those statements bear on Ms. Goodwin's credibility because Ms. Goodwin denied having any sort of relationship with Mr. White. Plaintiffs ask us "to adopt and adhere to this truism: That the credibility of any witness is subject to challenge at any time over the duration of the proceedings." They offer no authority to support that "truism."

Rule 52.01 states:

In all actions tried upon the facts without a jury, the court shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment. . . . Findings of fact and conclusions of law are unnecessary on decisions of motions under Rules 12 or 56 or any other motion except as provided in Rules 41.02 and 65.04(6).

Tenn. R. Civ. P. 52.01. "Upon motion of a party made not later than 30 days after entry of judgment the court may amend its findings or make additional findings and may amend the judgment accordingly." Tenn. R. Civ. P. 52.02.

The decision to deny or grant a motion for additional findings under Rule 52.02 is within the discretion of the trial court, and we will not disturb that absent a finding of abuse of discretion. *Holladay v. Speed*, 208 S.W.3d 408, 415 (Tenn. Ct. App. 2005).[20] By its own terms, Rule 52 excludes motions for summary judgment. A trial court's duty with respect to a motion for summary judgment is not to make findings of fact, but to determine

---

[20] "An abuse of discretion occurs when the trial court causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice." *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011).

whether there are material facts in dispute, and, if not, to make the appropriate legal findings. The trial court's final order stated the legal grounds upon which it granted Defendants' motion for summary judgment. *See* Tenn. R. Civ. P. 56.04 ("The trial court shall state the legal grounds upon which the court denies or grans the motion, which shall be included in the order reflecting the court's ruling."). As such, the trial court did not abuse its discretion in failing to grant a motion that was clearly inapplicable.

In addition, we discern no error in the trial court's decision to amend its ruling with regard to the grant of summary judgment. Until the trial court enters a final order, the case "remain[s] in the bosom of the trial court, and any rulings . . . may be modified at any time before a final order is entered." ***Wall v. Wall***, No. W2010-01069-COA-R3-CV, 2011 WL 2732269, at \*22 (Tenn. Ct. App. July 14, 2011) (citing ***Greer v. Greer***, No. W2009-01587-COA-R3-CV, 2010 WL 3852321, at \*6 n.7 (Tenn. Ct. App. Sept. 30, 2010)).

Finally, in reviewing the trial court's decision to grant the motion for summary judgment, "we make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied." ***Rye***, 477 S.W.3d at 250. This includes the duty to determine whether factual disputes exist that make summary judgment appropriate. *See **Elrod v. Cont'l Apartments***, No. M2007-01117-COA-R3-CV, 2008 WL 425947, at \*1 (Tenn. Ct. App. Feb. 13, 2008) ("When reviewing the evidence, we first determine whether factual disputes exist."). Pursuant to that duty, we reviewed the two sworn statements cited by Plaintiffs and determined that they do not create a material dispute of fact sufficient to preclude summary judgment on the basis of collateral estoppel, as discussed *supra*. Instead, we agree with the trial court's ruling denying the post-judgment motion, which reiterated that "[a]ll of Plaintiffs' issues have already been fully and fairly litigated and the findings of fact in the detailed opinion of [the district court] effectively preclude Plaintiffs from re-litigating those identical factual issues in this case." Thus, we conclude that this argument is without merit.

## IV. CONCLUSION

Based on the foregoing, we affirm the trial court's grant of summary judgment to the Bradley County Government and Tiffany Goodwin. Costs of this appeal are assessed against the appellants, Allan F. White Jr. and Marline White, for which execution may issue if necessary.

s/ J. Steven Stafford
J. STEVEN STAFFORD, JUDGE